## STATE v. LEX JONES.

(Filed 7 November 1962.)

**1. Assault and Battery § 5—**

"Serious injury" as used in G.S. 14-32 prescribing the punishment for an assault with a deadly weapon with intent to kill, inflicting serious injury not resulting in death, means physical or bodily injury and is not synonymous with "serious damage done", and therefore an instruction that if the jury should find beyond a reasonable doubt that the assault was made with a gun under such circumstances as would tend to create a breach of the peace that would outrage the sensibilities of the community, the assault would be assault with a deadly weapon inflicting serious injury, must be held for prejudicial error.

**2. Assault and Battery § 14—**

Evidence that defendant shot his victim in the back with a shotgun and that the victim went to the hospital and had 17 shot removed from his body, *held* sufficient to be submitted to the jury on the question of serious injury in a prosecution under G.S. 14-32.

APPEAL by defendant from *Williams, J.,* July, 1962 Term, GRAN-VILLE Superior Court.

Criminal prosecution upon a bill of indictment charging that the defendant "did unlawfully, wilfully and feloniously assault Lawrence Wortham with a certain deadly weapon, to-wit: a shotgun with the felonious intent to kill . . . the said Lawrence Wortham, inflicting serious injuries, not resulting in death . . ."

The defendant entered a plea of not guilty. The State called and examined three witnesses. Lawrence Wortham testified the defendant came to the home of the witness at about five o'clock in the afternoon of April 21, 1962. "So when he (the defendant) comes to cursing, I asked him to leave. He left and about dusky dark that night . . . I came outdoors . . . to the automobile . . . as I started back in the door, the shotgun shot. . . . I was hit by the shotgun. I was at my own home. . . . I had my back to the west. I didn't see the man that shot me. It was dark. . . . I went to the hospital and received treatment. All of the shots are in my body (back and arm) but seventeen. Seventeen were taken out."

Sheriff Roy D. Jones testified he investigated the shooting. During the investigation the defendant stated: "He and Lawrence got in an argument. Lawrence slapped him down. He got a fellow . . . to take him up the road about a mile and a half to . . . his sister's . . . He found nobody at home so he went in and got the shotgun (a .410). . . . He took the gun and shells and came back down . . . the road . . . laid down out there in the rye patch. . . . about 10 steps from the back door of Wortham's home. He waited until Wortham started back in the

STATE *v.* JONES.

house; when he opened the screen door . . . he shot him in the back. . . . He said he was lying in the rye waiting for Wortham to come back to the house."

H. T. Brame, deputy sheriff, testified to the admissions made by the defendant to the sheriff. The defendant did not offer evidence. From an adverse jury verdict and judgment thereon, the defendant appealed.

*T. W. Bruton, Attorney General, Harry W. McGalliard, Asst. Attorney General, for the State.*
*William T. Watkins, for defendant, appellant.*

HIGGINS, J. The indictment was drawn under G.S. 14-32: "Any person who assaults another with a deadly weapon with intent to kill, and inflicts serious injury not resulting in death, shall be guilty of a felony . . ."

The defendant's Assignment of Error No. 4 challenges the trial court's charge defining serious injury: "I instruct you in this case if you find beyond a reasonable doubt the assault was made with a gun under such circumstances as calculated to create a breach of the peace that would outrage the sensibilities of the community, it would be an assault with a deadly weapon inflicting serious injury."

The idea and some of the language are traceable to Justice Merrimon's opinion in *State v. Huntley*, 91 N.C. 617. In that case the Court had before it for review a special verdict finding the defendant, with an ordinary switch not larger than a little finger, gave his wife not more than 20 licks, breaking the skin, raising welts, and drawing blood, but "the said Rachel was not so injured as to prevent her from going about and doing as usual." Prior to the indictment, a justice of the peace had attempted to take final jurisdiction and dispose of the case upon the ground that no deadly weapon was used and *no serious damage done.* (emphasis added) At the time *State v. Huntley, supra,* was tried, punishment in assault cases was fixed by the Code of North Carolina, § 987: "In all cases of assault, with or without intent to kill or injure, the person convicted shall be punished by a fine or imprisonment, or both, at the discretion of the court; Provided, that where no deadly weapon has been used and no serious damage done, the punishment in assaults, assaults and batteries, and affrays, shall not exceed a fine of fifty dollars or imprisonment for thirty days; but this proviso shall not apply to cases of assault with intent to kill, or with intent to commit rape." In 1911, Chapter 193, Public Laws, also withdrew from the jurisdiction of the justices of the peace, "assault or assault and battery by any man or boy over 18 years old on any

female person." The section above quoted, now G.S. 14-33, deals with punishment for various types of assault — all common law offenses.

However, in 1919, Chapter 101, Public Laws, now G.S. 14-32, the General Assembly created a new criminal offense. Following passage of the Act, this Court, in defining the term "inflict serious injury not resulting in death," not infrequently reverted to the definition "of serious damage done" as if the two expressions were synonymous. *State v. Plemmons*, (230 N.C. 56, 52 S.E. 2d 10); *State v. Gregory*, 223 N.C. 415, 27 S.E. 2d 140; *State v. Hefner*, 199 N.C. 778, 155 S.E. 879; *State v. Strickland*, 192 N.C. 253, 134 S.E. 850

"Serious damage done" in assault cases withdraws jurisdiction from a justice of the peace. The term embraces results other than those arising from the use of a deadly weapon. If such a weapon is used, jurisdiction is withdrawn. Likewise, if serious damage is done, jurisdiction is also withdrawn. Serious damage, of course, includes serious physical injury. But it may include damage other than bodily injury. An assailant may roll the victim in the mud, ruin his best Sunday suit, break his glasses, and destroy his watch. This "serious damage done" removes jurisdiction of the case from a justice of the peace. *State v. Huntley, supra.*

By the passing of G.S. 14-32, the Legislature intended to create a new offense of higher degree than the common law crime of assault with intent to kill. The common law offense carries a fine or imprisonment, or both, in the discretion of the court. This new statutory offense is punishable by imprisonment for not less than four months nor more than ten years.

The statutory offense embodies (1) assault, (2) with a deadly weapon, (3) the use of the weapon must be with intent to kill, (4) the result of the use must be the infliction of serious injury, and (5) which falls short of causing death. *State v. Plemmons, supra.* The term "serious damage done" necessary to take an assault case from a justice of the peace is not synonymous with the term "inflicts serious injury not resulting in death," as used in G.S. 14-32. The term "inflicts serious injury" means physical or bodily injury resulting from an assault with a deadly weapon with intent to kill. The injury must be serious but it must fall short of causing death. Further definition seems neither wise nor desirable. Whether such serious injury has been inflicted must be determined according to the particular facts of each case.

Whether the assault is calculated to create a breach of the peace that would outrage the sensibilities of the community does not adequately or correctly describe the infliction of serious injury contemplated by G.S. 14-32. A simple assault committed by a prizefighter

upon a cripple at a Legion convention may be calculated to create a breach of the peace that would outrage the sensibilities of the community. The instruction given by the court does not properly define the serious injury contemplated by the statute under which the indictment was drawn. The court did not give any other definition.

The prosecuting witness was shot in the back and arm with a .410 shotgun, loaded with bird shot. He went to the hospital where 17 shot were removed. Whether the shot were removed by a knife, tweezers, or the finger nails, is undisclosed. How deep the shot penetrated into the flesh after passing through the clothing; whether the witness remained in the hospital half an hour, overnight, or a week, are matters also undisclosed.

The evidence is sufficient to go to the jury on the question of serious injury, but the jury must make the finding under a correct charge. For the error assigned, there must be a

New trial.