STATE OF NORTH CAROLINA, Plaintiff v. JACKIE DEAN GRUMBLES, Defendant

No. 9115SC62

(Filed 17 December 1991)

**1. Assault and Battery § 41 (NCI4th)— domestic assault—hands— deadly weapons**

The information contained in an assault defendant's indictment sufficiently states a charge amounting to the felony of assault with a deadly weapon where the indictment names defendant's hands as the deadly weapon and expressly states that defendant's hands were used as deadly weapons; defendant weighed approximately one hundred seventy five pounds at the time of the incident while the victim weighed approximately one hundred seven pounds; defendant beat his girlfriend about the head with his fists amd broke her jaw, requiring extensive hospitalization; and he choked her three separate times and left marks around her neck that were like fingerprints.

**Am Jur 2d, Assault and Battery §§ 48, 53.**

**Parts of human body, other than feet, as deadly or dangerous weapons for purposes of statutes aggravating offenses such as assault and robbery. 8 ALR4th 1268.**

**2. Assault and Battery § 41 (NCI4th)— domestic assault—hands as deadly weapons**

The trial court correctly denied defendant's motion to dismiss charges of assault with a deadly weapon with intent to kill inflicting serious injury at the close of the evidence where defendant assaulted his girlfriend with his hands; although defendant contended that there was insufficient evidence to classify his hands as deadly weapons, the State's evidence showed that the manner in which defendant used his hands to assault the victim had a devastating physical effect; defendant choked the victim so severely as to break her jaw and leave fingerprints around her neck; there was a great disparity in the size of the victim and defendant; and defendant admitted being strong enough to wrestle a gun away from a fellow construction worker after defendant had been shot in the stomach by that individual. The record reflects that the trial

court believed the issue of hands as deadly weapons to be close and the court properly allowed the jury to decide the issue.

**Am Jur 2d, Assault and Battery §§ 48, 53.**

**Parts of human body, other than feet, as deadly or dangerous weapons for purposes of statutes aggravating offenses such as assault and robbery. 8 ALR4th 1268.**

APPEAL by defendant from judgment entered 27 July 1990 in ALAMANCE County Superior Court by *Judge W. Steven Allen, Jr.* Heard in the Court of Appeals 8 October 1991.

Defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury in violation of N.C. Gen. Stat. § 14-32(a) by using his hands to beat and choke his girlfriend. The State's evidence at trial tended to show the following facts and circumstances. Defendant and his girlfriend, Pamela Jean Barton, had lived together for approximately 12 years. They separated in September 1989, after defendant had hit Ms. Barton. On 25 November 1989, defendant phoned Ms. Barton and invited her to watch a basketball game with him. After several refusals, Ms. Barton accepted defendant's invitation and allowed defendant to take her to his home.

Once at defendant's home, the two began to drink and eventually went to bed together. The next day they awoke and began drinking again. The following Monday, 27 November 1989, Ms. Barton accompanied defendant to a bar in Chapel Hill, North Carolina, where she helped defendant pack equipment to be taken out of the bar. They returned to defendant's house at approximately 6:00 p.m. Defendant and Ms. Barton ate dinner and then began to drink. Ms. Barton testified that at this point they both had become intoxicated and then went to bed together.

Later that evening, defendant and Ms. Barton got out of bed and went into the living room where they began to talk. Defendant began to question Ms. Barton concerning her social activities, *i.e.,* who she had seen since they had separated. Ms. Barton told defendant her activities were none of his business. At this point, defendant "got [a] real wild look on his face." Ms. Barton became scared because she had seen that "crazy" look several times in the past when defendant would beat her. Defendant jumped off the couch where the two were seated and then hit Ms. Barton in the right

eye with his right fist. Defendant then grabbed Ms. Barton by the throat with both hands and began to choke her. Defendant stopped choking Ms. Barton, paused, and then began to choke her again. He repeated this process three times before stopping his attack on Ms. Barton.

Ms. Barton was bleeding from her nose, ear and mouth. She stopped the bleeding and went to bed. Several days later, Ms. Barton sought medical treatment for her injuries. She suffered a broken jaw as a result of defendant's attempts to choke her. Her right eye was swollen and red. She was hospitalized and could not eat solid food for approximately one month. Ms. Barton testified she was afraid to press charges against defendant or to seek medical attention because of defendant's threat to "get even with [her]." At the time of the attack, Ms. Barton weighed approximately one hundred seven pounds and defendant weighed approximately one hundred seventy five pounds. After leaving the hospital, Ms. Barton eventually decided to press charges against defendant.

Defendant's evidence at trial tended to show that his acts were in reaction to Ms. Barton's attack upon him. Defendant testified Ms. Barton sprang up from the couch, grabbed his lip and "cut down in [it]" with her fingernail. Defendant further testified he had no choice but to grab Ms. Barton by the neck as she was "clawing" at him with her arms. Defendant explained he had to do this three times to get Ms. Barton off of him.

Defendant was convicted of assault with a deadly weapon inflicting serious injury. The trial court sentenced defendant to three years imprisonment, the presumptive sentence imposed for this felony.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Valerie B. Spalding, for the State.*

*G. Keith Whited for defendant-appellant.*

WELLS, Judge.

Defendant brings forth seven assignments of error for our review. He does not address his third and seventh assignments of error in his brief and they are therefore deemed abandoned. N.C.R. App. P., Rule 28. In his remaining assignments, he contends the trial court erred in denying his motions to dismiss for lack of jurisdiction, failure to plead a charge, and insufficiency of the

evidence regarding the use of a deadly weapon. He also assigns error to the trial court's jury instructions regarding the use of a deadly weapon and the submission of verdict choices including assault with a deadly weapon.

[1] The thrust of defendant's argument to this Court concerns the classification of defendant's hands as a deadly weapon. Defendant's first and second assignments of error, the trial court's denial of his motion to dismiss for lack of jurisdiction, and failure to plead a charge are argued together in defendant's brief. These assignments are used to support defendant's contention that the information in his indictment is insufficient to support a felony charge. Instead, he contends if the indictment supports any charge it would be only a misdemeanor charge of assault over which the superior court would have no jurisdiction. We disagree.

Our Supreme Court noted in *State v. Palmer*, 293 N.C. 633, 239 S.E.2d 406 (1977), that it is sufficient for indictments or warrants seeking to charge a crime in which one of the elements is the use of a deadly weapon (1) to name the weapon and (2) either to state expressly that the weapon used was a "deadly weapon" or to allege such as would *necessarily* demonstrate the deadly character of the weapon. (Emphasis in original.) A deadly weapon is "any article, instrument or substance which is likely to produce death or great bodily harm." *State v. Sturdivant*, 304 N.C. 293, 283 S.E.2d 719 (1981). This Court has held in *State v. Jacobs*, 61 N.C. App. 610, 301 S.E.2d 429 (1983), that a defendant's fists could have been deadly weapons given the manner in which they were used and the relative size and condition of the parties. N.C. Gen. Stat. § 14-32 classifies assaults with deadly weapons either with intent to kill or inflicting serious injury as felonies.

In the present case, the indictment more than adequately states information which would support a charge of assault with a deadly weapon. The indictment names defendant's hands as the deadly weapon and expressly states defendant's hands were used as "deadly weapons." Furthermore, it is clear by the criteria set out in *Jacobs, supra*, that this is a case where defendant's fists could be considered deadly weapons. Defendant weighed approximately one hundred seventy five pounds at the time of the incident while the victim of his attack weighed approximately one hundred seven pounds. Defendant beat Ms. Barton about the head with his fists, breaking Ms. Barton's jaw, requiring extensive hospitalization. Fur-

ther, he choked Ms. Barton three separate times and left marks around her neck that appeared to be "just like fingerprints."

Thus, the information contained in defendant's indictment sufficiently states a charge amounting to the felony of assault with a deadly weapon. It is beyond dispute that our superior courts have jurisdiction involving felony charges. *See generally*, N.C. Gen. Stat. § 7A-271 (1989). Therefore, defendant's argument regarding lack of jurisdiction is without merit and is overruled. Defendant's assignment of error concerning the failure of his indictment to plead a charge is also overruled.

[2] Defendant assigns as error the trial court's failure to grant his motion to dismiss the charges against him at the close of all the evidence. Defendant contends the evidence presented at trial was insufficient to classify his hands as deadly weapons and since the State failed to meet its burden of proof, the charges against defendant should be dismissed. Further, defendant contends that even if the State did meet its burden of proof on the element of a deadly weapon the evidence presented did not create a jury question. Therefore, defendant argues the trial court should have determined, as a matter of law, that defendant's hands were not deadly weapons. We disagree.

In ruling on a motion to dismiss, the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. King*, 299 N.C. 707, 264 S.E.2d 40 (1980). A motion to dismiss must be denied if the State has offered substantial evidence against the defendant of every essential element of the crime charged. "Substantial evidence" is defined as that amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Fletcher*, 301 N.C. 709, 272 S.E.2d 859 (1981).

It has long been the law of this State that "[w]here the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly . . . *is one of law, and the court must take responsibility of so declaring.* (Emphasis in original.) *State v. Torain*, 316 N.C. 111, 340 S.E.2d 465 (1986). However, where the instrument, according to the manner of its use or the part of the body at which the blow is aimed, may or may not be likely to produce [death or great bodily harm], its allegedly deadly character is one

of fact to be determined by the jury. *State v. Joyner*, 295 N.C. 55, 243 S.E.2d 367 (1978).

It is clear that under the rule set out in *State v. Jacobs, supra*, hands may be considered deadly weapons, given the manner in which they were used and the relative size and condition of the parties involved. The State's evidence showed the manner in which defendant used his hands to assault the victim had devastating physical effect. Defendant choked the victim so severely as to break her jaw and leave fingerprints around her neck. Further, the State's evidence showed the great disparity in the size of the victim and defendant. Defendant also admitted to being strong enough to wrestle a gun away from a fellow construction worker after defendant had been shot in the stomach by this individual.

The record reflects the trial court believed the issue of hands as deadly weapons to be "close." Under the rule in *Joyner, supra*, the trial court properly allowed the jury to decide this issue. Therefore, this assignment of error is overruled.

Defendant's final assignments of error concern the trial court's instructions to the jury on deadly weapons and the submission of a verdict sheet with verdict choices including assault with a deadly weapon. For the reasons we have stated, these assignments are overruled.

No error.

Judges PARKER and WYNN concur.