STATE OF NORTH CAROLINA v. RICHARD RAMSEUR

No. 510A93

(Filed 9 December 1994)

## 1. Criminal Law § 914 (NCI4th)— jury poll—combining of charges—no constitutional or statutory violation

The jury poll was not improperly conducted in violation of N.C. Const. art. I, § 24 and N.C.G.S. § 15A-1238 in a prosecution for first-degree murder, two assaults with a deadly weapon with intent to kill inflicting serious injury and possession of a firearm by a felon where each juror was individually told all of the charges for which the jury had returned a guilty verdict and was asked whether this was the juror's verdict and whether he or she still assented thereto.

**Am Jur 2d, Criminal Law § 1014.**

## 2. Assault and Battery § 25 (NCI4th)— aggravated assault— serious injury from air conditioning compressor—sufficiency of evidence

The evidence in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury was sufficient for the jury to find that the victim sustained serious injury as a result of defendant's assault upon him with an air conditioning compressor as alleged in the indictment where it tended to show that defendant beat the victim in the head with the butt of defendant's gun, knocking him to the floor; defendant then stood over the victim and attempted to throw the compressor at his head; the victim managed to move his head, but the compressor struck his shoulder; as a result of the compressor striking his shoulder, the victim was badly bruised, was unable to move his arm properly for three days, and experienced pain and suffering; and the victim was hospitalized for several hours and received treatment for his shoulder injury as well as his head injuries. There was no merit to defendant's contentions that the victim's injury could not be serious because the victim was able to continue struggling with defendant and get in his car and drive toward the police station and because the victim's skin was not broken by the blow and he did not sustain great pain or lingering disability.

**Am Jur 2d, Assault and Battery § 92.**

STATE v. RAMSEUR

[338 N.C. 502 (1994)]

**Sufficiency of bodily injury to support charge of aggravated assault. 5 ALR5th 243.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments entered by Freeman, J., at the 3 May 1993 Criminal Session of Superior Court, Catawba County, imposing a sentence of life imprisonment in a capital trial upon a jury verdict of guilty of first-degree murder, imposing two consecutive sentences of twenty years upon two jury verdicts of guilty of assault with a deadly weapon with intent to kill inflicting serious injury, and imposing an additional consecutive sentence of five years upon a jury verdict of guilty of possession of a firearm by a felon. Defendant's motion to bypass the Court of Appeals on the assault and possession of a firearm charges was allowed by this Court on 8 February 1994. Heard in the Supreme Court 10 October 1994.

*Michael F. Easley, Attorney General, by Barry S. McNeill, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

Evidence presented at defendant's trial showed the following:

Colen Parker operated Long View Salvage Company, with the help of his wife, Martha, and his son, Michael. The salvage company premises consisted of a salvage yard, a cinder-block garage, and a mobile-home type office unit. Defendant purchased an engine from the company, paid $200.00 down, and later paid the $125.00 balance of the purchase price. Defendant made arrangements for the salvage company to hold the engine until defendant paid the full purchase price, and then defendant would pick the engine up. After paying the balance, defendant did not pick the engine up, but did go to the salvage yard and removed parts from the engine.

On 19 March 1992, Martha Parker left the salvage yard shortly after 8:00 a.m. to go to a nearby laundromat and wash clothes. While at the laundromat, Martha saw defendant sitting in his parked car outside the laundromat. Approximately two hours later, Martha returned to the salvage yard and observed defendant walking towards the office. Colen Parker approached Martha and asked her to take their son, Michael Parker, to a nearby repair call. Defendant and Colen

were the only persons present at the salvage yard when Martha and Michael left.

When Martha returned to the salvage yard after dropping Michael off for the service call, defendant was no longer present. Colen came into the office and told Martha that defendant had hit him or kicked him while he was working on a truck tire and that defendant had threatened him, stating that he would be back at 3:00 "to get his money or his [Colen's] ass." Colen called the police, and the police chief came out to the salvage yard. Around 2:30 p.m., Martha went home for the day.

Michael Parker returned to the salvage yard but left again around 4:00 p.m. to pick up some dinner for himself and his father. Michael testified that he was unaware of the altercation between his father and defendant earlier in the day but that he had observed defendant driving by the salvage yard several times during the afternoon. When Michael returned to the salvage yard with the food, he observed Junior Casstevens' car parked there. As Michael pulled up, defendant drove in behind Michael and parked near Michael's truck. Michael got out and walked around to the rear of his truck. Defendant walked up to him and asked if Michael had his money. Michael replied that he did not deal with the money, and defendant pulled out a gun and shot him in the neck. Michael fell to the ground and saw defendant walk into the office trailer. Michael testified that he heard more shots inside the office and then saw defendant come out of the office. Junior Casstevens came out of the office at about the same time and was covered in blood. Michael remained still and attempted to appear dead. Both defendant and Casstevens drove away in their vehicles.

Junior Casstevens testified that on 19 March 1994, he went by the salvage yard at approximately 4:00 p.m. to buy a part. While Casstevens was in the garage paying Colen Parker, defendant drove up. Defendant came into the garage and asked if Colen had his money. Colen replied that Michael was not there but that he would be back shortly. Defendant responded that he would also be back and left. During this conversation with defendant, Colen whispered to Casstevens to go into the office and call the police. Casstevens went into the office and was searching for the police station's phone number when Colen entered the office. Colen called the police and informed them that defendant had returned; Colen asked if they had a car available to come to the salvage yard. As Colen hung up the phone, he said, "Here he is again."

Casstevens further testified that he looked out the window and saw defendant talking to Michael Parker. He heard a shot fired and saw Michael fall backwards. Colen screamed and grabbed a .22-caliber rifle that was located against the wall by the office door. The door to the office was opened by either defendant or Colen, and Casstevens crouched behind the office desk. Casstevens heard a shot, and then Colen threw the .22 at Casstevens and said, "[I]t won't shoot." Casstevens heard another shot and saw defendant and Colen, who had been shot, scuffling. Colen asked Casstevens for help, and Casstevens moved behind defendant and attempted to take away the pistol defendant was holding.

The three men struggled, and defendant knocked Casstevens onto the floor. Defendant then shot Colen again, and he fell to the floor. Defendant turned to Casstevens and began struggling with him. Defendant pointed his gun at Casstevens and attempted to pull the trigger. Casstevens testified that he heard one more shot, and then he heard the gun misfire. Defendant then began beating Casstevens in the head with the butt of the gun. As Casstevens lay dazed on the floor, defendant picked up an air conditioning compressor and stood over Casstevens. Defendant threw the compressor at Casstevens' head, but Casstevens managed to move partially out of the way, and the compressor struck his shoulder.

Defendant and Casstevens continued to struggle, and Casstevens managed to get defendant to the door. Defendant then walked to his car and drove off. Casstevens went to his car and began driving towards the police station; he met two police cars on the way and followed them back to the salvage yard.

Colen Parker died from a gunshot wound to the head. He was also shot twice in the abdomen. Michael Parker was hospitalized for over two months and is confined to a wheelchair. Junior Casstevens spent several hours in the hospital as a result of the blows to his head and shoulder. His head injuries required approximately fifteen stitches. His shoulder was badly bruised, and he experienced pain and suffering as a result of the shoulder injury.

[1] Defendant first argues the jury poll in this case was conducted in an improper manner, in violation of Article I, Section 24 of the North Carolina Constitution and N.C.G.S. § 15A-1238. Defendant did not object to the manner in which the jurors were polled.

Upon learning that the jury had reached its verdicts, the trial judge had the jurors returned to the courtroom and asked the clerk to take the verdicts. The clerk read the verdict in each case and asked the foreperson if it was the unanimous verdict of the jury. The foreperson indicated that each verdict was the unanimous decision of the jury. The transcript then reflects that the following occurred:

> CLERK: Members of the jury, would you please stand. Members of the jury, your foreperson has returned into the open court as the unanimous verdicts of the jury that the defendant Richard Ramseur is guilty of first degree murder; is guilty of assault with a deadly weapon with intent to kill inflicting serious injury upon Michael Parker; is guilty of assault with a deadly weapon with intent to kill inflicting serious [injury] upon Junior Casstevens; and is guilty of possession of a firearm by a felon. Are those the unanimous verdicts [of] the jury so say you all? (All jurors indicated in the affirmative.)

> CLERK: You may be seated.

> THE COURT: You want the jury polled?

> MR. HANNAH [defense counsel]: Thank you, Your Honor.

BY THE COURT:

Q   Mr. Foreperson, would you please stand up again, please.

> Mr. Griffin, you have returned a verdict in open court that the jury unanimously find[s] the defendant guilty of first degree murder; guilty of assault with a deadly weapon with intent to kill inflicting serious injury upon Michael Parker; guilty of assault with a deadly weapon with intent to kill inflicting serious injury upon Junior Casstevens; and guilty of possession of a firearm by a felon. Was that your verdict?

A   Yes, it was.

Q   Is that still your verdict?

A   Yes.

Q   Do you still assent to that verdict, sir?

A   Yes, sir.

The transcript reveals that the trial judge proceeded to question each of the remaining jurors in a similar fashion and that each of the jurors unequivocally answered these questions in the affirmative.

In *State v. Norris*, 284 N.C. 103, 199 S.E.2d 445 (1973), this Court found no error in a jury poll conducted in virtually the same manner as the one in this case. In *Norris*, the jury returned a verdict of guilty of rape and kidnapping, and the jurors were individually questioned as to whether this was their verdict, whether it was still their verdict, and whether they still assented to their verdict. *Id.* at 107, 199 S.E.2d at 448. Similarly, in this case, each of the jurors individually was told the charges for which the jury had returned a guilty verdict and was asked whether this was their verdict and whether they still assented to the verdict. We find no error in the manner in which the jury was polled.

[2] Defendant next assigns error to the trial court's refusal to grant defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury on Junior Casstevens. Defendant argues that the indictment charged defendant only with assaulting Mr. Casstevens with an air conditioning compressor and that the evidence was insufficient as a matter of law to demonstrate that Mr. Casstevens sustained serious injury as a result of defendant's assault with the compressor. We find no merit in this argument.

In determining whether evidence is sufficient to survive a motion to dismiss, the evidence must be considered in the light most favorable to the State. *State v. Mason*, 336 N.C. 595, 597, 444 S.E.2d 169, 169 (1994). The test for sufficiency of the evidence is whether there is substantial evidence of every element of the offense charged, or any lesser offense, and of defendant being the perpetrator of the crime. *State v. McAvoy*, 331 N.C. 583, 589, 417 S.E.2d 489, 493 (1992). "Substantial evidence" is relevant evidence that reasonable jurors might accept as adequate to support a conclusion. *Id.* The term "substantial evidence" simply means "that the evidence must be existing and real, not just seeming or imaginary." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

This Court has not defined "serious injury" for purposes of assault prosecutions, other than stating that "[t]he injury must be serious but it must fall short of causing death" and that "[f]urther definition seems neither wise nor desirable." *State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962). Whether "serious injury" has been inflicted must be decided on the facts of each case. *Id.*

In the case *sub judice*, Mr. Casstevens testified that defendant beat him in the head with the butt of defendant's gun, knocking him

to the floor. Defendant then stood over Mr. Casstevens and attempted to throw the compressor at his head. Mr. Casstevens managed to move his head, but the compressor struck his shoulder. Mr. Casstevens further testified that as a result of the compressor striking his shoulder, he was badly bruised, was unable to move his arm properly for three days, and experienced pain and suffering. Evidence also showed that Mr. Casstevens was hospitalized for several hours and received treatment for his shoulder injury as well as his head injuries.

When viewed in the light most favorable to the State, there is substantial evidence that defendant inflicted serious injury upon Mr. Casstevens when he struck him with the air conditioning compressor. Further, there is substantial evidence of all the other elements of assault with a deadly weapon with intent to kill inflicting serious injury. We do not find persuasive defendant's contention that Mr. Casstevens' injury could not be serious because Mr. Casstevens was able to continue struggling with defendant and get in his car and drive towards the police station. Nor do we find persuasive defendant's arguments that the injury was not serious because Mr. Casstevens' skin was not broken by the blow and because he did not sustain great pain or lingering disability. Accordingly, we find that the trial court committed no error in denying defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury and that the trial court properly submitted the charge to the jury.

We conclude that defendant received a fair trial, free of prejudicial error.

NO ERROR.