STATE OF NORTH CAROLINA v. SAMPSON BRUNSON

No. COA05-1486

(Filed 7 November 2006)

**1. Criminal Law— mistrial denied—victim mentioning prior crime**

The trial court did not abuse its discretion by not declaring a mistrial in a prosecution for rape, assault, and other crimes after the victim testified that defendant had shot his first wife. The jury was immediately instructed to disregard the comment and there is no indication that it was unable to do so.

**2. Criminal Law— effectiveness of counsel—motion for appropriate relief**

A contention that trial counsel was not effective should have been raised in a motion for appropriate relief. It was remanded for further investigation.

STATE v. BRUNSON

[180 N.C. App. 188 (2006)]

**3. Assault— hands as deadly weapons—sufficiency of evidence**

There was sufficient evidence to support a charge of assault with a deadly weapon inflicting serious injury where defendant argued that his hands and feet, with which he committed the assault, were not deadly weapons. Although defendant argued that there was no evidence of the weight of defendant or of the victim, the jury was given the proper standard for determining the issue, as outlined in *State v. Lawson*, 173 N.C. App. 270.

**4. Assault— seriousness of injury—sufficiency of evidence**

There was sufficient evidence of the seriousness of the victim's injury in a prosecution for assault with a deadly weapon inflicting serious injury where the jury heard evidence from the victim about her pain "all over" as a result of the beating, and from a nurse examiner and the police about black eyes, bruises, and redness on the vagina.

Judge ELMORE concurring in part and dissenting in part.

Appeal by Defendant from judgments dated 22 April 2005 by Judge Catherine C. Eagles in Superior Court, Guilford County. Heard in the Court of Appeals 16 August 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Richard A. Graham, for the State.*

*Paul F. Herzog for Defendant-Appellant.*

McGEE, Judge.

Sampson Brunson (Defendant) was a next-door neighbor of the alleged victim in this case in March 2003. Defendant and the victim had lived next to one another for about a year. They had a friendly and familiar relationship. At trial, the victim testified that she thought of Defendant as a "grandfather figure," and that Defendant was "sweet," "friendly," and "nice" to her children. The victim also stated that Defendant frequently drove her to work. In contrast, Defendant testified at trial that in addition to their relationship as neighbors and friends, he and the victim had eventually begun a sexual relationship.

It is undisputed that on 15 March 2003, Defendant picked up the victim from work. The victim testified that when Defendant picked her up, he was upset because a woman he cut grass for had not paid him enough, and that he was also mad because the victim had

neglected to call Defendant the night before. The victim stated that Defendant continued to mutter for some time, and then pulled out a silver-colored gun, putting it to the victim's head as he continued to drive. Eventually, around dusk, the victim stated that Defendant drove into a deserted area that appeared to be out "in the wilderness." The victim testified that after driving down an isolated road, Defendant forced her out of the truck and began beating her with his hands and feet. The victim stated she suffered "pain . . . all over." Defendant later forced the victim back into the truck, at which time she lost her hair bow.

The victim testified that Defendant then drove farther into the woods, and in the process, broke off a side mirror of his truck on a tree limb. She further testified that Defendant parked the truck and demanded that she take off her clothes. The victim refused to do so, and Defendant tore off her clothes. Defendant began to kiss and fondle the victim, eventually penetrating her with his penis by force.

The victim stated that Defendant then apologized, but said he would have to kill her to avoid going back to jail. In response to the victim's pleas, Defendant changed his mind and told her that he loved her. The victim said she and Defendant then got back into the truck. They drove to her mother's house, where they picked up her son. Defendant then drove the victim and her son home.

The victim told no one of the incident for the next two days. On 17 March 2003, the victim went to work and confided in her sister, who worked at the same place. Her sister took her to the hospital, where a full rape kit was performed and where the victim was interviewed by police.

Police took the victim the following day back to the scene of the crime, where they discovered physical evidence including her lost hair bow, pieces of the truck's mirror and reflector lights, and a matchbook cover. Police arrested Defendant on 18 March 2003.

Defendant was convicted of first-degree rape, possession of a firearm by a felon, assault with a deadly weapon inflicting serious injury, first-degree kidnapping, and being a violent habitual felon. Defendant appeals.

[1] Defendant first contends the trial court erred by failing to declare a mistrial upon the victim's declaration on direct examination that Defendant had shot his first wife. This contention is without merit.

The victim, in response to the question, "What did you say" replied, in part, "And I think [Defendant] thought I was his ex-wife, the first lady, you know, that he shot." Defense counsel immediately objected, and the trial court told the jury to disregard the answer. Despite this instruction to disregard, Defendant moved for a mistrial following a recess. After considerable discussion, the trial court denied Defendant's motion, and defense counsel excepted to the trial court's ruling.

"Whether or not to declare a mistrial is a matter within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a gross abuse of such discretion." *State v. Bidgood*, 144 N.C. App. 267, 273, 550 S.E.2d 198, 202, *cert. denied*, 354 N.C. 222, 554 S.E.2d 647 (2001). "Thus, a mistrial should not be allowed unless ' "there are improprieties in the trial so serious that they substantially and irreparably prejudice the defendant's case and make it impossible for the defendant to receive a fair and impartial verdict." ' " *State v. Hurst*, 360 N.C. 181, 188, 624 S.E.2d 309, 316 (citations omitted), *cert. denied*, *Hurst v. North Carolina*, —— U.S. ——, —— L. Ed. 2d —— (2006); *see also* N.C. Gen. Stat. § 15A-1061 (2005) (requiring "substantial and irreparable prejudice to the defendant's case" for a mistrial).

We cannot say the trial court grossly abused its discretion in this case. As the trial court noted in denying Defendant's motion for a mistrial, the jury was immediately instructed to disregard the comment. " 'When the trial court instructs the jury not to consider incompetent evidence, any prejudice is ordinarily cured.' " *State v. Robinson*, 136 N.C. App. 520, 523, 524 S.E.2d 805, 807 (2000) (quoting *State v. Adams*, 347 N.C. 48, 68, 490 S.E.2d 220, 230 (1997), *cert. denied*, *Adams v. North Carolina*, 522 U.S. 1096, 139 L. Ed. 2d 878 (1998)). Defendant does not show how he was substantially and irreparably harmed by the testimony. Although he asserts the evidence may have "tipped the balance against him," there is no indication the jury was unable to disregard the testimony as instructed by the trial court. We therefore find no merit in Defendant's first assignment of error.

[2] Defendant next contends his trial counsel provided ineffective assistance by calling several character witnesses to testify to Defendant's good character, which allowed the State to question the witnesses about the highly prejudicial nature of Defendant's prior convictions. As Defendant acknowledges, however, this claim is properly brought in a motion for appropriate relief. " '[Such claims]

brought on direct review will be decided on the merits [only] when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.' " *State v. al-Bayyinah*, 359 N.C. 741, 752, 616 S.E.2d 500, 509 (2005) (quoting *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied, Fair v. North Carolina*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002)), *cert. denied, al-Bayyinah v. North Carolina*, —— U.S. ——, 164 L. Ed. 2d 528 (2006). Although Defendant argues the present case can be decided on the merits without further investigation, we disagree. In the present case, more information is needed to determine the reasons for defense counsel's strategy, and we therefore dismiss this issue without prejudice to Defendant's right to file a motion for appropriate relief. *See al-Bayyinah*, 359 N.C. at 753, 616 S.E.2d at 509-10 (holding that "[t]rial counsel's strategy and the reasons therefor are not readily apparent from the record, and more information must be developed to determine [the issue]. Therefore, this issue is dismissed without prejudice to [the] defendant's right to raise this claim in a post-conviction motion for appropriate relief.").

Finally, Defendant contends the trial court erred in denying his motion to dismiss the charge of assault with a deadly weapon inflicting serious injury. Defendant argues there was insufficient evidence to support his conviction.

This Court has recently considered a very similar case, in which we stated:

> When ruling on a motion to dismiss, the trial court must " 'consider whether the State has presented substantial evidence of each essential element of the crime charged.' " The trial court further must interpret the evidence in the light most favorable to the State, "drawing all reasonable inferences in the State's favor."

*State v. Lawson*, 173 N.C. App. 270, 279, 619 S.E.2d 410, 415 (2005) (citations omitted), *disc. review denied*, 360 N.C. 293, 629 S.E.2d 276 (2006). In *Lawson*, this Court also dealt with a motion to dismiss a charge of assault with a deadly weapon inflicting serious injury. The *Lawson* court listed the essential elements of the crime: "By statute, the essential elements of assault with a deadly weapon with intent to inflict serious injury are (1) an assault; (2) with a deadly weapon; (3) inflicting serious injury; (4) not resulting in death." *Id.* at 279, 619 S.E.2d at 415-16 (citing N.C. Gen. Stat. § 14-32(b) (2004); *State v. Aytche*, 98 N.C. App. 358, 366, 391 S.E.2d 43, 47 (1990)). In his brief,

Defendant attacks two of these elements: the requirement of a deadly weapon and the infliction of serious injury.

[3] As in the present case, the defendant in *Lawson* argued that his hands and feet could not be considered deadly weapons. The *Lawson* court disagreed, noting this Court's previous decisions holding that "a defendant's fists can be considered a deadly weapon depending on the manner in which they were used and the relative size and condition of the parties." *Lawson*, 173 N.C. App. at 279, 619 S.E.2d at 416 (emphasis omitted) (citing *State v. Rogers*, 153 N.C. App. 203, 211, 569 S.E.2d 657, 663 (2002), *disc. review denied*, 357 N.C. 168, 581 S.E.2d 442 (2003); *State v. Krider*, 138 N.C. App. 37, 530 S.E.2d 569 (2000); *State v. Grumbles*, 104 N.C. App. 766, 771, 411 S.E.2d 407, 410 (1991); *State v. Jacobs*, 61 N.C. App. 610, 301 S.E.2d 429, *disc. review denied*, 309 N.C. 463, 307 S.E.2d 368 (1983); *State v. Archbell*, 139 N.C. 537, 51 S.E. 801 (1905)). Defendant concedes there was great disparity in height between Defendant and the victim. Defendant, at 6'5", stands a foot and a half taller than the victim, who is 4'11". Defendant argues, however, that there is nothing in the record to indicate their respective weights. Moreover, he argues that the jury, having received the trial court's original instruction to "consider the nature of the size of the fists, the manner in which they were used, and the size and strength of [Defendant] as compared to [the victim][,]" asked the trial court for further instruction. The trial court responded, "There's no formula. It's just a question of evaluating those things and making a factual decision in light of your reason and common sense as to whether [Defendant] used his hands and fists as a deadly weapon." Though Defendant argues the trial court's response left the jury to decide the issue without any meaningful guidance, we disagree. The jury was given the proper standard, as outlined in *Lawson*. In keeping with its role as finder of fact, the jury came to the conclusion that, in this case, Defendant's hands were deadly weapons.

[4] Defendant also argues that the State failed to carry its burden to provide substantial evidence of the element of serious injury. The North Carolina Supreme Court "has not defined 'serious injury' for purposes of assault prosecutions, other than stating that '[t]he injury must be serious but it must fall short of causing death' and that '[f]urther definition seems neither wise nor desirable.' " *State v. Ramseur*, 338 N.C. 502, 507, 450 S.E.2d 467, 471 (1994) (quoting *State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962)). "Whether such serious injury has been inflicted must be determined according to the particular facts of each case." *Jones*, 258 N.C. at 91, 128 S.E.2d at 3.

Turning to the facts of the present case, Defendant notes that the victim did not seek medical treatment for two days, and then only at the insistence of her sister and a co-worker. However, the victim testified that she felt "pain . ... all over" during the beating, and the record shows that she suffered bruising, swelling, and scratches. It is for the jury to decide whether such evidence constitutes serious injury. "A jury may consider such pertinent factors as hospitalization, pain, loss of blood, and time lost at work in determining whether an injury is serious. Evidence that the victim was hospitalized, however, is not necessary for proof of serious injury." *State v. Hedgepeth*, 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991) (citations omitted). In this case, the jury heard injury evidence from the nurse examiner and from police. The witnesses observed that the victim had swollen, black eyes; bruises on her neck, arms, back and inner thighs; and redness on her vagina. The jury also heard the victim's testimony that she suffered "pain . . . all over" as a result of the beating.

We find there was sufficient evidence to submit this charge to the jury in light of the amount of evidence in the record as to injury, and the fact that our common law does not otherwise define "serious injury" but leaves it to the jury to decide under appropriate instructions from the trial court. Considering the evidence in the light most favorable to the State, the evidence was sufficient for the jury to find that Defendant assaulted the victim with a deadly weapon and inflicted serious injury. The trial court did not err in denying Defendant's motion to dismiss.

Based on the foregoing analysis, we find no error in Defendant's convictions.

No error.

Judge BRYANT concurs.

Judge ELMORE concurs in part and dissents in part with a separate opinion.

ELMORE, Judge, concurring in part and dissenting in part.

I concur in the majority opinion that there was no error in defendant's convictions for First-Degree Rape, Possession of a Firearm by a Felon, First-Degree Kidnapping, and being a Violent Habitual Felon. However, I respectfully dissent from that part of the majority opinion

ESTATE OF HARVEY v. KORE-KUT, INC.

[180 N.C. App. 195 (2006)]

holding that the State met its burden of showing substantial evidence of serious injury. Because I believe that no such substantial evidence was presented, I would vacate defendant's Assault with a Deadly Weapon Inflicting Serious Injury conviction.

As noted in the majority opinion, "When ruling on a motion to dismiss, the trial court must consider whether the State has presented *substantial* evidence . . . ." *State v. Lawson*, 173 N.C. App. 270, 279, 619 S.E.2d 410, 415 (2005) (emphasis added). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Whether evidence presented constitutes substantial evidence is a question of law for the court." *State v. Frogge*, 351 N.C. 576, 584-85, 528 S.E.2d 893, 899 (2000) (quotations and citations omitted).

I find it noteworthy that the State failed even to argue this point in its brief. Ostensibly, the State seeks to rely on bruises, swelling, and scratches, along with the victim's testimony that she felt "pain all over," to establish that the victim suffered a serious injury. I would hold that, as a matter of law, such paltry evidence cannot constitute that which "a reasonable mind might accept as adequate to support a conclusion" of serious injury. *Id.*

Because I would not find that substantial evidence of serious injury was presented to the trial court, I respectfully dissent from that part of the majority opinion that would uphold defendant's conviction for Assault with a Deadly Weapon Inflicting Serious Injury.