IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-663

Filed 19 February 2025

Durham County, Nos. 22CRS286189; 22CRS1562

STATE OF NORTH CAROLINA

v.

CHARLES DOMINICK REAVES

Appeal by Defendant from judgments entered 19 January 2024 by Judge L. Lamont Wiggins in Durham County Superior Court. Heard in the Court of Appeals 14 January 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General M. Lynne Weaver, for the State.*

*New Hanover County Public Defender by Assistant Public Defender Max E. Ashworth III, for Defendant.*

WOOD, Judge.

Charles Reaves ("Defendant") appeals from judgments entered upon a jury verdict finding him guilty of assault with a deadly weapon inflicting serious injury and possession of a firearm by a convicted felon. Defendant argues the trial court erred in denying his motion to dismiss for insufficiency of the evidence on the charge of assault with a deadly weapon inflicting serious injury. For the reasons stated herein, we hold Defendant received a fair trial free from error.

## I.    Factual and Procedural Background

In 2021, Defendant met Emily Brownstein through the dating app "Tinder." Shortly thereafter, Brownstein moved into Defendant's apartment; however, in February 2022, she ended the relationship and moved out. A few months later Defendant reached out to Brownstein wanting to reconnect and resume their relationship. Ultimately, she moved back into Defendant's apartment in early August 2022. Defendant and Brownstein were twenty-three years old at the time.

During the first few days following Brownstein's move-in, their relationship was "pretty good" and "everything was fine." Not long after, they began to argue frequently, and Defendant became "verbally, physically, and mentally" abusive. Defendant insulted, degraded, criticized, and physically assaulted Brownstein with his fists, a curtain rod, and the butt of his handgun. During one argument, Defendant hit her on the head with his gun, causing her head to split open and bleed profusely. The laceration required ten staples. These altercations reportedly occurred "every single day" that she lived with Defendant.

Their final altercation occurred on 3 September 2022. That day, Brownstein awoke in the early afternoon to find Defendant was in a "bad mood" because he was upset over an argument they had the previous night. Following a brief conversation, while she remained seated on their bed, Defendant struck Brownstein on the head and face with his fists and kicked her in the mouth. Defendant hit her with his gun. Eventually, Brownstein escaped from the bed and grabbed a pillow to use in an

attempt to shield herself from Defendant. Defendant then grabbed a curtain rod that lay on the floor nearby and hit her with it.

Brownstein ran toward the front door of the apartment to escape Defendant. As she opened the door, Defendant grabbed her, threw her to the ground, and shut and locked the door. Defendant pointed his gun at her and threatened to shoot her while stating that if she tried to get away or told anyone about what he had done, he would kill her.

In fear for her life, Brownstein ran towards the apartment's balcony while Defendant had his back turned. She slid open the door, climbed over the railing, and jumped from the second-floor balcony. She fell approximately ten to fifteen feet landing in bushes on the ground level. Brownstein ran to a mail carrier that was nearby and asked her to call 911, explaining to the carrier that she was "scared that he was going to kill [her]," he had a gun, and she needed help. While she spoke with the 911 dispatcher, Defendant exited the apartment and tried to convince her not to call the cops and to leave with him. Unsuccessful, Defendant left.

Two law enforcement officers responded and took a statement from Brownstein. Durham County EMS arrived shortly after and examined her injuries. She reported pain in her head, nose, lip, legs, and feet. The paramedic noted Brownstein's injuries in the report: bruising and swelling to her left arm; bruising around her cheekbones, with most bruising on the cheek where the gun hit her; bruising and swelling behind her left ear and left thigh; bleeding near her nose ring

and earrings; lacerations on her scalp, upper lip, right shin; and a fingernail torn off. The paramedic additionally observed injuries from Defendant's previous attacks including, old bruising, medical staples in her scalp, bruising from strangulation attempts, and lacerations. The treatment provided to her at the scene consisted of bandages, ice packs, ibuprofen, and Tylenol.

Brownstein was transported by ambulance to the hospital for further evaluation, arriving at 3:37 p.m. Upon arrival, she reported her pain level as a "5" out of "10," increasing to a "6" after a few hours. She described it as a "ringing in [her] head," her arms and legs were "pulsating," and her body was "throbbing." The treating nurse provided Brownstein with a "very strong pain medication," which decreased her pain level to a "0" in the span of approximately one hour. The hospital's report contained similar findings as the EMS report, documenting the bruising, swelling, and tenderness on her body. She was discharged from the hospital around 11:30 p.m. with instructions to take Tylenol and ibuprofen as needed. Following this incident, her pain lasted one to two weeks, the bruising took two to four weeks to heal, and she had scarring on her leg and head. Brownstein provided a written statement to law enforcement the day after her discharge from the hospital.

Defendant was indicted for first-degree kidnapping, assault with a deadly weapon inflicting serious injury, and possession of a firearm by a convicted felon and was subsequently arrested on 7 November 2022. Defendant's trial was conducted on 16 January 2024 through 19 January 2024. At trial, Brownstein testified about the

assault that occurred on 3 September 2022, as well as the injuries she sustained in the weeks prior. Additionally, law enforcement officers, the assisting paramedic, and one of the nurses that treated Brownstein at the hospital testified. The State introduced, *inter alia,* photographs taken on 3 September 2022 of Brownstein's injuries, a recording of the 911 call, the EMS and hospital reports, and Brownstein's written statement to law enforcement. At the close of the State's evidence, Defense counsel moved to dismiss the assault with a deadly weapon inflicting serious injury charge. Defendant argued there was insufficient evidence from which the jury could find Brownstein suffered "serious injury" from the assault that occurred on 3 September 2022. The trial court denied Defendant's motion to dismiss.

The jury found Defendant guilty of assault with a deadly weapon inflicting serious injury and possession of a firearm by a convicted felon. Defendant was found not guilty of first-degree kidnapping. On 19 January 2024, the trial court entered judgments sentencing Defendant to two consecutive terms of 33 to 52 months of imprisonment and 17 to 30 months of imprisonment, respectively. Defendant entered oral notice of appeal at the conclusion of sentencing.

## II.    Analysis

Defendant asserts one argument on appeal. Defendant contends the trial court erred when it denied Defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injury because Brownstein's injuries were not serious injuries pursuant to N.C. Gen. Stat. § 14-32(b).

Upon a defendant's motion to dismiss, the trial court must examine "whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Summey*, 228 N.C. App. 730, 733, 746 S.E.2d 403, 406 (2013) (citation omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Miles*, 267 N.C. App. 78, 82, 833 S.E.2d 27, 30 (2019) (citation omitted). Further, "[w]hen ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455–56 (2000) (citation omitted). It is well-established that "[i]n borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury." *State v. Blagg*, 377 N.C. 482, 489, 858 S.E.2d 268, 273 (2021) (citation omitted).

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *Smith*, 186 N.C. App. at 62, 650 S.E.2d at 33. "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the trial court." *State v. McVay*, 287 N.C. App. 293, 296, 882 S.E.2d 598, 602 (2022)

(citation omitted). This Court must affirm the trial court's denial of a motion to dismiss if, when taking the evidence in the light most favorable to the State, the record "discloses substantial evidence of all material elements constituting the offense for which the accused was tried." *Id.*

When ruling on a defendant's motion to dismiss, the trial court must consider whether the State presented substantial evidence that the defendant committed "(1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Webster*, 291 N.C. App. 392, 397, 895 S.E.2d 898, 902 (2023) (citations omitted); *see also* N.C. Gen. Stat. § 14-32(b). On appeal, Defendant's sole argument is that the State did not present sufficient evidence of the third element, "inflicting serious injury," to allow the question to reach the jury. Specifically, Defendant argues "[b]ruising and throbbing pain that are treated with Tylenol do not amount to serious injury."

Serious injury is "physical or bodily injury, but not death, resulting from an assault with a deadly weapon." *State v. Allen*, 233 N.C. App. 507, 513, 756 S.E.2d 852, 858 (2014) (cleaned up). Apart from this definition, our courts have "declined to define serious injury" under N.C. Gen. Stat. § 14-32, as "further definition seems neither wise nor desirable." *State v. Walker*, 204 N.C. App. 431, 446, 694 S.E.2d 484, 495 (2010) (citation omitted). For these reasons, "[w]hether serious injury has been inflicted depends on the particular facts of each case and is a question for the jury." *Allen*, 233 N.C. App. at 513, 756 S.E.2d at 858 (citation omitted). It has been

consistently held that, "as long as the State presents evidence that the victim sustained a physical injury as a result of an assault by the defendant, it is for the jury to determine the question of whether the injury was serious." *State v. Alexander*, 337 N.C. 182, 189, 446 S.E.2d 83, 87 (1994). Although this determination is made on a case-by-case basis and is a fact-specific inquiry, this Court has outlined the following relevant considerations: "(1) pain and suffering; (2) loss of blood; (3) hospitalization; and (4) time lost from work." *State v. Morgan*, 164 N.C. App. 298, 303, 595 S.E.2d 804, 809 (2004) (citation omitted).

In arguing that the trial court erred when it denied his motion to dismiss, Defendant cites two prior decisions by this Court and our Supreme Court. First, in *State v. Brunson*, the defendant picked up the victim from work and pulled a gun out, putting it against her head as he continued to drive. *State v. Brunson*, 180 N.C. App. 188, 190, 636 S.E.2d 202, 203 (2006). Eventually, the defendant parked in a deserted area, forced the victim out of the vehicle, and beat her with his hands and feet. He then tore off the victim's clothes and raped her. The victim did not seek medical assistance for two days following the incident; however, she felt "pain . . . all over" as the defendant beat her and she suffered from "bruising, swelling, and scratches." *Id.* at 194, 636 S.E.2d at 206. Further, the nurse and law enforcement officer observed that the victim had "swollen, black eyes; bruises on her neck, arms, back and inner thighs; and redness on her vagina." *Id.* As in the present case, the defendant in *Brunson* argued the State failed to present sufficient evidence of serious injury. In

- 8 -

light of the victim's injuries, this Court held that the question of whether the defendant inflicted serious injury was properly submitted to the jury. Moreover, the Court emphasized that "our common law does not otherwise define 'serious injury' but leaves it to the jury to decide under appropriate instructions from the trial court." *Id.*

Second, in *State v. Ramseur*, the defendant beat the victim in the head with the bottom of his gun and struck the victim in the shoulder with an air compressor. *State v. Ramseur*, 338 N.C. 502, 507–08, 450 S.E.2d 467, 471 (1994). The victim was hospitalized for several hours, received treatment on his shoulder and fifteen stitches on his head. He sustained bruising to his shoulder and could not properly move his arm for a few days. On appeal, the defendant argued that the State failed to present sufficient evidence that the victim's shoulder injury was a serious injury because of the defendant's assault with the air compressor. The defendant contended that the injury could not be considered "serious" because the victim drove to the police station after the altercation, the skin on his shoulder was not broken by the blow, and he did not endure great pain or lingering disability. The Court in *Ramseur* held that the defendant's arguments were unpersuasive and there was substantial evidence of serious injury. Accordingly, the charge was properly submitted to the jury. *Id.* at 508, 450 S.E.2d at 471.

In the case *sub judice*, Defendant acknowledges that Brownstein was bruised, suffered pain, and went to the hospital. However, Defendant argues, unlike the

victims in *Brunson* and *Ramseur*, she did not need medical treatment; rather, she went to the hospital and received Tylenol. Similarly, Defendant asserts, unlike the victim in *Brunson*, she did not have a black eye, swollen limbs, and did not need a rape kit examination. Further, in distinguishing *Ramseur*, she did not require stitches in her head and was not immobilized for any period of time. In sum, Defendant urges this Court to conclude that *Brunson* and *Ramseur* stand for the proposition that a serious injury, at a minimum, requires medical attention that goes beyond a mere cursory examination.

Contrary to Defendant's position, our courts have consistently declined to define serious injury, aside from the requirement that the victim sustain physical or bodily injury resulting from an assault by the defendant. *See State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962) ("Further definition seems neither wise nor desirable"); *see also Walker,* 204 N.C. App. at 446, 694 S.E.2d at 495 ("The courts of this [S]tate have declined to define serious injury for purposes of assault prosecutions."). Thus, to agree with Defendant's argument, would be to adopt a threshold requirement contrary to longstanding case law.

At trial, the evidence tended to show that Defendant repeatedly hit Brownstein with his fists and his gun, kicked her in the mouth, and struck her with a curtain rod. To escape his attack, Brownstein jumped from the second-floor balcony of Defendant's apartment after he barred her escape by door. She immediately felt pain in her head, nose, lip, legs, and feet. Upon examination, the EMS paramedic reported bruising

and swelling to her left arm, cheekbones, left ear, left thigh; blood near her nose ring and earrings; lacerations on her scalp, upper lip, and right shin; and her fingernail was torn off. Subsequently, she was evaluated at the hospital and monitored for several hours. Brownstein classified her pain as a "5" and "6," her body as "throbbing," and she received strong pain medication for her injuries. Her pain lasted between one to two weeks, the bruising took two to four weeks to heal, and she was scared at the time of trial.

After careful review of the record evidence, we hold the trial court did not err by denying Defendant's motion to dismiss. The State presented sufficient evidence to allow the jury to decide whether Defendant inflicted serious injury upon Brownstein. *See Morgan*, 164 N.C. App. at 303, 595 S.E.2d at 809 ("Relevant factors in determining whether serious injury has been inflicted include, but are not limited to: (1) pain and suffering; (2) loss of blood; (3) hospitalization; and (4) time lost from work.").

Further, as discussed *supra*, "as long as the State presents evidence that the victim sustained a physical injury as a result of an assault by the defendant, *it is for the jury to determine the question of whether the injury was serious*." *Alexander*, 337 N.C. at 189, 446 S.E.2d at 87 (emphasis added); *see also State v. Joyner,* 295 N.C. 55, 65, 243 S.E.2d 367, 374 (1978) (because there was evidence of "physical or bodily injury to the victim, the question of the nature of these injuries was . . . properly submitted to the jury."). It is a "factual determination within the province of the

jury[.]" *State v. McLean*, 211 N.C. App. 321, 325, 712 S.E.2d 271, 275 (2011) (citation omitted). Accordingly, consistent with *Alexander* and *Joyner*, because the State presented evidence that Brownstein sustained physical injuries because of the assault by Defendant, it was within the province of the jury to determine the nature of those injuries.

## III. Conclusion

The trial court did not err in denying Defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injury. The State presented sufficient evidence from which the jury could find Brownstein suffered serious injury from the assault that occurred on 3 September 2022. Defendant received a fair trial free from error.

NO ERROR.

Chief Judge DILLON and Judge MURRY concur.