STATE OF NORTH CAROLINA v. HERMAN LEE AYTCHE

No. 898SC945

(Filed 1 May 1990)

1. **Criminal Law § 179 (NCI4th) — pain affecting capacity to stand trial — motion for continuance denied after competency hearing**

     The trial court did not err in denying defendant's motion for a continuance based on his assertion that pain interfered with his ability to stand trial where the trial court conducted a competency hearing prior to trial; defense counsel offered his personal observations of the extent of defendant's pain and his inability to assist in his defense; the trial court then personally questioned defendant as to his ability to understand the proceedings, observed the physical appearance of defendant, and reviewed samples of defendant's handwriting; the court also heard testimony from defendant's jailer, to which defendant did not object, and reviewed the report of a physi-

cian who had seen defendant on the evening prior to trial; the court received information regarding a similar occurrence five months earlier at defendant's trial on an unrelated offense, and defendant did not object; and failure of the court to make specific findings and conclusions was not error because the evidence compelled the ruling made.

**Am Jur 2d, Continuance § 39.**

2. **Criminal Law § 66.12 (NCI3d) — identification testimony — defendant seated at defense table — no improper confrontation**

The trial court did not abuse its discretion in denying defendant's motion to be seated away from the defense table during identification testimony by the assault victim since the victim testified at both voir dire and at trial that he had seen defendant several times prior to the incident and that on the night of the incident, he spent some thirty minutes with the defendant before the assault occurred; several days after the assault the victim positively identified defendant in a photographic lineup; the victim again identified defendant as his attacker during voir dire and at trial; and there was no equivocation or hesitancy associated with the victim's identification at any time.

**Am Jur 2d, Evidence § 367.**

3. **Constitutional Law § 46 (NCI3d) — request for substitute counsel — denial proper**

The trial court did not err in denying defendant's request to have substitute counsel appointed prior to trial where the only reason offered by defendant for his request was that he didn't understand what his attorney was doing, didn't like the jury selected by the attorney, and wasn't able to assist his attorney in the jury selection process, but defendant expressed no desire to represent himself and offered no substantive reason for the appointment of replacement counsel.

**Am Jur 2d, Criminal Law § 982.**

4. **Jury § 7.14 (NCI3d) — jury selection — no racial discrimination shown**

Where only one peremptory challenge was exercised for a person of the same race as defendant, and that person was excused because she had been convicted of a felony, defendant

failed to make a prima facie showing of racial discrimination in the prosecutor's use of peremptory challenges.

**Am Jur 2d, Jury § 235.**

5. **Assault and Battery § 23 (NCI4th); Mayhem § 1 (NCI3d) — assault with deadly weapon inflicting serious injury — maiming — two distinct offenses**

Defendant could properly be convicted of both assault with a deadly weapon inflicting serious injury and maiming, since each offense contained distinct elements not found in the other.

**Am Jur 2d, Assault and Battery § 57; Mayhem and Related Offenses §§ 1-5.**

APPEAL by defendant from judgment entered 3 May 1989 in LENOIR County Superior Court by *Judge Cy Anthony Grant, Sr.* Heard in the Court of Appeals 15 February 1990.

At trial, the evidence for the State tended to show the following: On the evening of 6 October 1988 Hildred Perry, age 64, was at home watching television with Joette Aytche. At some point they were joined by a woman known only as Pam. Approximately ten minutes later Joette left. Shortly thereafter Pam and Perry were joined by the defendant. After talking and watching television together for approximately thirty minutes, defendant and Pam prepared to leave. At that point defendant hit Perry with a 16-ounce soft drink bottle, injuring his eye. Defendant continued beating Perry with a bottle or some other object while demanding money from him. Pam also removed Perry's trousers, which they took with them. Before leaving Perry's house, defendant took $1.40 and threatened to kill Perry and his family if they came after him. Due to the extent of the injury, Perry's eye had to be surgically removed and he now wears a false eye.

Defendant did not offer any evidence. The jury found him guilty of robbery with a dangerous weapon, assault with a deadly weapon inflicting serious injury, and malicious maiming. Judgments were entered sentencing him to prison terms of twenty-five years, fourteen years, and ten years, the fourteen and ten-year sentences to run concurrently at the conclusion of the twenty-five-year term. Defendant appeals.

STATE v. AYTCHE

[98 N.C. App. 358 (1990)]

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General James B. Richmond, for the State.*

*T. Dewey Mooring, Jr. for defendant-appellant.*

WELLS, Judge.

**[1]** Defendant first contends the court erred in denying his motion for a continuance based on defendant's assertion that pain interfered with his ability to stand trial. This assignment in effect challenges the trial court's ruling that defendant was competent to stand trial. Defendant contends pain from a previous back injury rendered him incapable to proceed, pursuant to the provisions of N.C. Gen. Stat. § 15A-1001 (1988).

Prior to trial defense counsel filed a written motion for "evaluation of defendant." In this motion, counsel requested that defendant be examined and treated for back injuries and pain in order to determine if defendant's capacity to stand trial was affected by this condition or, in the alternative, if this condition could not be confirmed, that defendant be committed to a state mental health facility for observation and treatment in order to determine his capacity to proceed. In response to defendant's motion the court held a pre-trial hearing pursuant to N.C. Gen. Stat. § 15A-1002 (1988 & Supp. 1989) to determine defendant's capacity to proceed. After hearing evidence, the trial court determined that defendant was competent to stand trial and that his pain would not interfere with his ability to assist his counsel. Accordingly, the trial court denied the motion for evaluation.

The determination of a defendant's capacity to proceed in North Carolina is governed by G.S. §§ 15A-1001-1002. The objective of the statute is to ensure that a defendant will not be tried or punished while mentally incapacitated. G.S. § 15A-1002(b)(1) authorizes a court to appoint medical experts to examine the state of defendant's mental health; however, it does not authorize the court to appoint a medical examiner for a general physical exam or to see if certain physical problems exist. G.S. § 15A-1002 in pertinent part provides:

(b) When the capacity of the defendant to proceed is questioned, the court:

(1) *May* appoint one or more impartial medical experts to examine the defendant and return a written report describ-

STATE v. AYTCHE

[98 N.C. App. 358 (1990)]

ing the present state of the defendant's *mental health.*
. . . (Emphasis supplied.)

(2) *May* commit the defendant to a State mental health
facility for observation and treatment for the period
necessary to determine the defendant's capacity to proceed.
. . . (Emphasis supplied.)

(3) *Must* hold a hearing to determine the defendant's capaci-
ty to proceed. . . . (Emphasis supplied.)[1]

It is well settled that the decision whether to grant a motion
for appointment of medical experts to determine the state of a
defendant's mental health or for commitment to a state mental
health facility for psychiatric examination to determine competency
of a defendant to stand trial is discretionary with the trial court.
*State v. Woods*, 293 N.C. 58, 235 S.E.2d 47 (1977); *State v. Gates*,
65 N.C. App. 277, 309 S.E.2d 498 (1983). However, a competency
hearing is mandatory whenever a motion questioning defendant's
capacity to stand trial is made. *State v. Silvers*, 323 N.C. 646,
374 S.E.2d 858 (1989).

In this case the mandatory competency hearing was held prior
to trial on 2 May 1989. In support of the motion for evaluation,
defense counsel offered his personal observations of the extent
of defendant's pain and defendant's inability to assist in his defense.
After hearing from defense counsel, the court personally questioned
defendant as to his ability to understand the proceedings; observed
the physical appearance of defendant; and reviewed samples of
defendant's handwriting. The court also heard testimony from de-
fendant's jailer and reviewed the report of a physician who had
seen defendant on the evening prior to trial. After considering
this information, the court concluded that defendant was competent
to stand trial and denied the motion for evaluation.

The defendant also contends that the trial court committed
error during the competency hearing by considering testimony from

---

1. G.S. § 15A-1002(b) was amended effective 1 October 1989. While we rely
on the statute as it was written at the time this cause of action arose, we note
for the record that the amendment rewriting subsection (b) did not change the
discretionary role of the court in deciding whether to appoint medical experts
to examine defendant or to commit defendant to a state mental health facility
for observation, treatment and diagnosis. Furthermore, a competency hearing re-
mains mandatory whenever the issue of defendant's capacity to stand trial is raised.

defendant's jailer; by receiving information regarding a similar occurrence five months earlier at defendant's trial on an unrelated offense; and for failing to make "formal findings of fact and conclusions of law." The record reveals that after summarizing the evidence presented at the competency hearing, the trial court made the following statement: "Based upon the foregoing the Court finds that the Defendant is competent to stand trial; that the Defendant's pain will not interfere with him assisting his counsel in trying his case. As a result the court will deny the defendant's motion." This "finding" was more precisely a conclusion of law which was adequately, if implicitly, supported by the facts. While the better practice is for the trial court to make specific findings and conclusions when ruling on a motion under G.S. § 15A-1002(b), failure to do so is not error where the evidence compels the ruling made. *State v. Gates, supra.* Finally, defendant did not object to either the comments by the jailer or to the information concerning the similar occurrence; therefore, they are not preserved for appellate review.

The court's conclusion regarding defendant's capacity is binding on appeal if supported by the evidence. *State v. McCoy*, 303 N.C. 1, 277 S.E.2d 515 (1981). Despite the fact that defendant may have been experiencing some back pain, the record contains sufficient evidence to support the trial court's conclusion that he was competent to stand trial. This assignment is overruled.

[2] Defendant next assigns error to the trial court's denial of his motion to be seated elsewhere in the courtroom during identification testimony by the victim. Defendant contends that any doubts as to the identity of the person to be identified are erased when a witness sees a defendant seated at the defense table.

The conduct of a trial has historically been the exclusive province of the trial court. Unless there is a controlling statutory provision or an established rule which governs the situation, all matters relating to the orderly conduct of the trial, or which involve the proper administration of justice in the court, are within the trial court's discretion. *See, e.g., State v. Rhodes*, 290 N.C. 16, 224 S.E.2d 631 (1976).

While defendant's argument raises a provocative aspect of some in-court identifications, based on the record in this case we cannot say that the trial court in any way abused its discretion in denying defendant's motion to be seated away from the defense table. The

victim testified at both *voir dire* and at trial that he had seen the defendant several times prior to the incident and that on the night of the incident he spent some thirty minutes with the defendant before the assault occurred. Several days after the assault the victim positively identified defendant in a photographic line-up. The victim again identified defendant as his attacker during *voir dire* and at trial. There was no equivocation or hesitancy associated with the victim's identification at any time. This assignment of error is overruled.

Defendant also contends that the victim's in-court identification was "inherently incredible" and therefore should have been suppressed. For the reasons stated above this assignment of error is also overruled.

[3] Defendant's fourth assignment of error concerns the trial court's denial of his request to have substitute counsel appointed prior to trial. The only reason offered by defendant in support of this request is his statement to the court after the jury was selected. At that time defendant told the court he was dissatisfied with his attorney because "[he didn't] understand what [his] attorney [was] doing . . . and he's selected a jury that I wasn't satisfied with because I was not able to give him assistance in selecting this jury." In the absence of any substantial reason for the appointment of replacement counsel, an indigent defendant must accept counsel appointed by the court, unless he wishes to present his own defense. *State v. Hutchins*, 303 N.C. 321, 279 S.E.2d 788 (1981), and cases cited therein. Defendant does not have the right to insist new counsel be appointed simply because he has become dissatisfied with his services. *Id.* Defendant expressed no desire to represent himself nor did he offer any substantive reason for the appointment of replacement counsel. This assignment is overruled.

[4] Defendant's next assignment of error concerns whether the prosecutor used peremptory jury challenges in a racially discriminatory manner. Following jury selection, defendant requested that the State make a showing on the challenge of the jurors. In his brief, defendant, who is black, directs his argument to one black female potential juror who was ultimately excused by the State. The record does not disclose the final make-up of the jury with regard to race.

A defendant may establish a *prima facie* case of purposeful racial discrimination in the selection of the petit jury by the prose-

STATE v. AYTCHE

[98 N.C. App. 358 (1990)]

cutor's use of peremptory challenges by making three showings: (1) that defendant is a member of a cognizable racial group; (2) that the prosecutor used the challenges to exclude members of defendant's race; and (3) that these and other relevant facts and circumstances as they appear in the record raise an inference of racially discriminatory intent on the part of the State. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *See also State v. Attmore*, 92 N.C. App. 385, 374 S.E.2d 649 (1988), *disc. rev. denied*, 324 N.C. 248, 377 S.E.2d 757 (1989); *citing State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279 (1987), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Only if this *prima facie* showing is made does the burden shift to the State to make a showing of nondiscriminatory intent. *Batson, supra.*

When requested by defendant to explain the reasons for the State's peremptory challenges, the prosecutor did so. The State excused three jurors, two white males and a black female. The black female was actually selected to serve on the jury; however, prior to the jury being impaneled, she advised the court that she had not responded to a question posed by the State. *Voir dire* was reopened pursuant to N.C. Gen. Stat. § 15A-1214 (1988) and the juror admitted she had been convicted of involuntary manslaughter. In light of that information, the State excused her. Only one peremptory challenge was exercised for a person of the same race as defendant, and that person was excused because she had been convicted of a felony. On these facts defendant has failed to make a *prima facie* showing of racial discrimination. Accordingly, this assignment of error is overruled.

[5] In his remaining assignment of error defendant ostensibly argues that the trial court erred in denying his motion to dismiss at the close of all the evidence. While initially contending that all three charges against him should have been dismissed at the close of the evidence, defendant offers no reason, argument or authority for his exception to the charge of armed robbery. His exception as to that charge is therefore deemed abandoned pursuant to Rule 28(a) of the North Carolina Rules of Appellate Procedure. Defendant's actual argument on appeal is that the evidence presented could not support both the offense of assault with a deadly weapon and the offense of malicious maiming. In effect, defendant makes a double jeopardy argument rather than a sufficiency of the evidence argument. He maintains that the elements of maiming are included in the crime of assault with a deadly weapon with intent to kill

and inflicting serious injury and that the facts in this case can support only one charge.

For the record we note that defendant was charged with assault with a deadly weapon inflicting serious injury pursuant to N.C. Gen. Stat. § 14-32(b) (1986) and not with assault with a deadly weapon with intent to kill and inflicting serious injury pursuant to N.C. Gen. Stat. § 14-32(a) (1986). The elements of a charge under G.S. § 14-32(b) are (1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death. The elements of malicious maiming relevant in this case are (1) with malice aforethought (2) to unlawfully put out an eye of another person (3) with intent to murder, maim or disfigure. N.C. Gen. Stat. § 14-30 (1986). Clearly, these are separate crimes. The elements of malice aforethought and intent to murder, maim or disfigure, necessary elements of G.S. § 14-30, are not elements of G.S. § 14-32(b). Additionally, use of a deadly weapon is required for a violation of G.S. § 14-32(b) but not for G.S. § 14-30. Because each offense contains distinct elements not found in the other, defendant was properly convicted of and punished for each offense. This assignment is overruled.

We hold that defendant received a fair trial, free from prejudicial error.

No error.

Judges COZORT and LEWIS concur.