STATE OF NORTH CAROLINA, Plaintiff,
v.
JEREMY C. BISHOP, Defendant.
No. COA07-1305
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Attorney General Roy A. Cooper III, by Assistant Attorney General Gregory P. Roney, for the State.
Brian Michael Aus, for defendant-appellant.
STROUD, Judge.
Defendant appeals from judgments because "the trial court erred by failing to conduct a competency hearing" and continuing . . . [defendant's] trial until [defendant] was capable of proceeding." For the following reasons, we find no error.
During pre-trial motions, defendant's counsel made a motion to continue because of defendant's "health concerns." Defendant's attorney informed the court that defendant had been hospitalized, and the discharge papers indicated that defendant had a compression fracture of a vertebra and that defendant should avoid prolonged sitting. Defendant had been prescribed Vicodin and Flexeril, a muscle relaxant and sedative. Defendant's attorney believed that the medications could impair defendant's ability to participate and assist in his defense.
The court asked defendant how the compression fracture occurred. Defendant responded that he had been thrown off a horse during the weekend. Defendant stated that his "old lady" and brother helped get him out of bed to attend court that morning. Defendant complained of being in pain. The court then inquired, "Do you feel like you don't understand what's going on"? Defendant responded, "I understand it and everything[.]" The court then denied defendant's motion to continue and stated "we'll do the best we can to accommodate you and make you as comfortable as possible." Defendant again subsequently complained of pain and the court again offered to work with defendant to make him as comfortable as possible. Defendant persisted in his complaints of pain, and after holding a bench conference with the attorneys, the court continued the trial until the following morning. The court stated to defendant, "I'm going to let you go home, take your medicine, hope you'll be in a lot better shape when you get back here tomorrow. Get something in your system. Eat something. You comply with all of those orders that the doctor gave you. Do you understand"? Defendant responded affirmatively.
Defendant arrived late for court the next day. Defendant informed the court that he could not sit. The court directed defendant to stand at a certain place and do the best he could. After the lunch break, defendant's attorney reported to the court that defendant had stated he was having trouble hearing and understanding what was transpiring because of the medications he was taking. Counsel renewed her request for a continuance. The court declined to continue the case and allowed defendant to move around in order to ease any discomfort. Defendant commented that he did not hear all of the testimony because the medications made him sleepy and it was difficult for him to stay awake. The court asked defendant whether he needed "coffee or something like that"? Defendant declined the offer. The court told defendant to do the best he could and then called the jury back into the courtroom.
Later, outside of the presence of the jury, defendant's attorney advised the court that defendant intended to testify. Defendant's attorney stated that she had advised defendant not to testify. The court then questioned defendant to clarify whether defendant did wish to testify. Defendant responded by stating the medications had him "all confused," and " [his] train of thought all messed up." The court remarked that the only remedy would be for defendant to discontinue taking the medications. Defendant agreed with the court's statement.
To assure defendant would not have access to the medications, the court instructed that defendant be taken to a holding cell to clear his head. The court instructed defendant to let the court know "[w]hen your head clears[.]" Defendant responded, "I mean  I'm going  I'm confused. I mean, I'm confused. I mean, I don't ." The court told defendant that his lawyer would go into the holding cell with him and explain matters to him. The court instructed defendant's counsel,
You'll need to go back in there and find out the affects of these drugs on him. You'll need to come back and put in the record what the drug is, what the contraindication is, what the doctor's directions were, how long it will take for him to clear his head such that he can testify so that this trial is not delayed any further.
Defendant's attorney subsequently reported to the court that
Speaking with Mr. Bishop, in the holding cell, he's indicated he's on Vicodin and Flexeril, F-l-e-x-e-r-i-l; Vicodin, he takes as necessary according to his doctor's instructions. The last time one he took [sic] was at eight o'clock roughly, this morning. The Flexeril, he is supposed to take every six hours. He also took that at eight o'clock this morning. He's due medicine at this time. He indicated that it causes him to be drowsy, unfocused, and basically have a scattered train of thought.
When I explained to him how we would proceed if he needed to come off of these medications so that he would clearly understand what we would be doing, he indicated that he is ready to finish today; the he does not want to any longer take the stand on his own behalf. If your Honor is satisfied with that, I think he's ready to proceed.
The following exchange then occurred between the court and defendant's attorney:
THE COURT: So  the fact that he's now intelligently, knowingly, and voluntarily electing not to testify obviates the fact that he was concerned about getting on the stand and not being able to answer in a lucid manner?
MS. HALES: I believe so, Your Honor. He  when I explained to him that he would be spending the night in the jail so that the Court would be sure that he would not ingest any other medications of any kind, he wanted to go ahead and proceed today.
Defendant then returned to the courtroom and the court conducted the following inquiry of defendant:
THE COURT: All right; Mr. Bishop, when you were outside the courtroom your lawyer has now informed us that you're not going to testify and go forward today; is that correct?
THE DEFENDANT: Yes, sir. I mean 
THE COURT: That is your decision; nobody can make that decision but you.
THE DEFENDANT: Oh, I know.
THE COURT: All she can do is advise you. If you are concerned that you're not clear and your head is foggy such that you don't understand what's going on, we can wait. We'll wait until you tell this Court that your head is clear and that you understand the nature of things going on around you, and that you're ready to participate in this trial. I'm not mistrying this case 
THE DEFENDANT: I know.
THE COURT:  I'm not stopping this case. We have got a jury impaneled. I'm not going to inconvenience 
THE DEFENDANT: Yes, sir.
THE COURT:  13 other citizens of Sampson County  well 50 other citizens of Sampson County in order to get a jury of 13; do you understand that?
THE DEFENDANT: Yes, sir; I understand that.
THE COURT: So it's your call. Do you want to wait and sort things out and get clear or are you telling this Court that you're clear enough to go forward today?
THE DEFENDANT: I mean  want my mind to be clear for it, and I want it to be a whole lot clearer than what it already is, but I ain't trying to go stay in the jail house while I wait, I mean, for it to clear. I mean, I ain't never had to take no medicine before and it's  I'm having a hard time.
THE COURT: Are you worried about not understanding what's going on here? I'm going to make the decision for you if you can't make it on your own, and you are going to force me to put you in an environment where I know that you don't take drugs. Do you understand that?
THE DEFENDANT: Oh, yes, sir. I mean, I don't take drugs. I mean, I'm through with all of that.
THE COURT: I'm not talking about that. I'm talking about these Vicodin and Flexeril.
THE DEFENDANT: I mean, I understand.
THE COURT: I mean, it's ironic that you get to the point that you either have to testify or not and now you don't understand what's going on.
THE DEFENDANT: I mean, I wanted to get up there and tell my side of it and my lawyer, she advised me it wouldn't be a good idea.
THE COURT: So are you going to take your lawyer's advice or do you want to testify?
THE DEFENDANT: I'm going to take my lawyer's advice, I mean.
THE COURT: And so that's your decision; that's what you are telling the Court?
THE DEFENDANT: Yes, sir. I mean 
THE COURT: You are going to elect to go forward and not to testify?
THE DEFENDANT: I mean, yeah. She didn't think it would be a good idea for me to get up there and testify. I'm going to take her advice.
A motion to continue is ordinarily reviewed for an abuse of discretion but when the motion raises a constitutional issue, the trial court's ruling "is fully reviewable by an examination of the particular circumstances of each case." State v. Searles, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981) (internal citations omitted). However, whether the motion is grounded on a constitutional basis or not, a new trial will not be awarded unless the defendant shows that "the denial was erroneous and also that his case was prejudiced as a result of the error." State v. Branch, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982) (citation omitted).
It is a violation of due process to try a criminal defendant who is incompetent at the time of trial. Medina v. California, 505 U.S. 437, 453, 120 L.Ed. 2d 353, 368 (1992) (citations omitted). The issue of the competency of the defendant to stand trial "may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court." N.C. Gen. Stat. § 15A-1002(a) (2005). The burden of showing incapacity or incompetence to stand trial is upon the defendant. State v. O'Neal, 116 N.C. App. 390, 395, 448 S.E.2d 306, 310 (citation omitted), disc. review denied, 338 N.C. 522, 452 S.E.2d 821 (1994). When the competence of the defendant is called into question, the court must determine whether the defendant "has capacity to comprehend his position, to understand the nature of the proceedings against him, to conduct his defense in a rational manner and to cooperate with his counsel so that any available defense may be interposed." State v. Jackson, 302 N.C. 101, 104, 273 S.E.2d 666, 669 (1981) (citation omitted). "[A] defendant does not have to be at the highest stage of mental alertness to be competent to be tried. So long as a defendant can confer with his or her attorney so that the attorney may interpose any available defenses for him or her, the defendant is able to assist his or her defense in a rational manner." State v. Shytle, 323 N.C. 684, 689, 374 S.E.2d 573, 575 (1989).
In State v. Aytche, 98 N.C. App. 358, 391 S.E.2d 43 (1990), the defendant contended that pain from a back injury rendered him incapable of proceeding. Aytche at 361, 391 S.E.2d at 44. The trial court conducted a competency hearing before trial. Id. at 361, 391 S.E.2d at 45. Based upon the competency hearing the court concluded that the defendant "is competent to stand trial, that the Defendant's pain will not interfere with him assisting his counsel in trying his case." Id. at 363, 391 S.E.2d at 45. This Court held that despite the fact that the defendant was experiencing back pain, the evidence supported the court's conclusion that the defendant was competent to stand trial. Id. at 363, 391 S.E.2d at 46.
In the case at bar, the court inquired into the nature of defendant's complaints of pain. The court also made various inquiries into defendant's comprehension of the proceedings. Defendant's responses revealed that defendant was able to comprehend his position, to understand the nature and object of the proceedings, to conduct his defense in a rational manner, and to cooperate with his counsel in the preparation of a defense.
We conclude the record supports the court's action to proceed with the trial. We find no error.
NO ERROR. Chief Judge MARTIN and CALABRIA concur.
Report per Rule 30(e).