An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1288
NORTH CAROLINA COURT OF APPEALS

Filed:  3 June 2014

STATE OF NORTH CAROLINA

    v.                                    Wake County
                                               No. 10 CRS 004710
MIGUEL ANGEL MARTINEZ,
    Defendant.


Appeal by defendant from judgment entered 29 January 2013 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 17 March 2014.

> *Roy Cooper, Attorney General, by G. Mark Teague, Assistant Attorney General, and Joseph L. Hyde, Assistant Attorney General, for the State.*

> *Staples S. Hughes, Appellate Defender, by Jason Christopher Yoder, Assistant Appellate Defender, for defendant-appellant.*


MARTIN, Chief Judge.


Defendant Miguel Angel Martinez appeals by writ of certiorari from a judgment entered upon a jury verdict finding him guilty of assault with a deadly weapon inflicting serious injury. For the reasons stated herein, we find no error in defendant's trial.

On 26 April 2010, Amy Alperstine was working as a correctional officer in Unit 1 of Central Prison where defendant was an inmate. Inmates assigned to Unit 1, the lockup unit, were given an hour of recreational time in an indoor recreational cell each day. When an inmate's recreational time was over, the inmate was required to turn around and place his hands behind him through a small passageway in the cell while an officer handcuffed him. Once the inmate was restrained, the recreational cell would then be opened and the inmate would be escorted back to his cell. Alperstine approached defendant's recreational cell to escort him back to his cell. As Alperstine reached out to handcuff defendant, defendant suddenly struck Alperstine's left forearm with a razor blade.

Correctional Officer Jeffrey Thayer testified that he was standing approximately ten feet away when he heard Alperstine yell that she had been cut. When Officer Thayer went to see what had happened and saw that Alperstine's forearm was bleeding, he told her to leave and seek medical attention. Correctional Sergeant Kimberly Ross was in the control station approximately ten to twelve feet away from Alperstine when the incident occurred. Sergeant Ross testified that after witnessing the attack and the blood on Alperstine's arm, she radioed for assistance and unlocked the door to allow Alperstine

to leave the block.

Alperstine testified that "[t]here was a lot of blood" and described the injury as a laceration five centimeters in length and deep enough to expose the muscle. Following the attack, Alperstine immediately went to the nurse's station where a pressure bandage was applied to the injury to stop the bleeding. Alperstine was then sent to the emergency room where the laceration was closed with sixteen stitches and she was tested for HIV and other blood borne illnesses, given a tetanus shot, and prescribed pain medication and antibiotics. Although she was advised not to return to work, Alperstine chose to return to work the next day and was placed on light duty for the following two weeks. In the weeks following the attack, Alperstine could not move or lift anything with her left arm as a result of the injury, and she testified that, nearly three years later, she still had a "pretty big scar" on her forearm and experienced lingering numbness from the scar down to her forefinger and thumb.

At trial, the razor blade recovered from the recreational cell as well as photographs of the injury, both before it was stitched and after the stitches were removed, were introduced into evidence. On 29 January 2013, the jury convicted defendant of assault with a deadly weapon inflicting serious injury and he

was sentenced to a term of thirty-six to fifty-three months imprisonment to be served consecutively to his preexisting sentences. Defendant appeals.

_____

Defendant's written notice of appeal fails to fully comply with the requirements of Rule 4 of the North Carolina Rules of Appellate Procedure. Cognizant of the defect in his notice of appeal, defendant seeks review by petition for writ of certiorari. In the interest of justice, we exercise our discretion to allow defendant's petition for writ of certiorari pursuant to Rule 21(a)(1) of the North Carolina Rules of Appellate Procedure. *See State v. Hammonds*, __ N.C. App. __, __, 720 S.E.2d 820, 823 (2012) (allowing petition for certiorari where the defendant lost his direct appeal through no fault of his own, but rather as result of sloppy drafting of his notice of appeal by counsel and failure to grant certiorari would be "manifestly unjust").

On appeal, defendant argues the trial court erred by: (I) admitting lay opinion testimony as to the seriousness of Alperstine's injury; (II) denying defendant's motion to dismiss the charge; and (III) failing to intervene *ex mero motu* during the State's closing arguments.

I.

Defendant first asserts that the trial court abused its discretion by allowing the admission of the following testimony by Sergeant Ross over defense counsel's objection: "Once I saw the blood on Ms. Alperstine's hand, I knew it had to be serious." Defendant contends the testimony was improper lay opinion testimony and prejudicial because it embraced an ultimate issue in the case and thus supplanted the jury's role in determining the seriousness of the injury. We disagree.

We review a trial court's ruling regarding the admissibility of lay opinion testimony for an abuse of discretion. *State v. Washington*, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000), *disc. review denied*, 353 N.C. 396, 547 S.E.2d 427 (2001). "[A] lay witness may testify in the form of an opinion, despite the fact that his opinion may embrace an ultimate issue to be decided by the jury." *State v. Owen*, 130 N.C. App. 505, 515, 503 S.E.2d 426, 432, *appeal dismissed and disc. review denied*, 349 N.C. 372, 525 S.E.2d 187-88 (1998); *accord* N.C. Gen. Stat. § 8C-1, Rule 704 (2013). Rule 701 of the North Carolina Rules of Evidence permits lay opinion testimony where the opinion is rationally based on the witness's perception and is helpful to the jury. N.C. Gen. Stat. § 8C-1, Rule 701 (2013). Admissible lay opinion testimony under this rule includes shorthand statements of fact. N.C. Gen. Stat.

§ 8C-1, Rule 701 official commentary. Our Supreme Court has defined shorthand statements of fact as "'instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time.'" *State v. Braxton*, 352 N.C. 158, 187, 531 S.E.2d 428, 445 (2000) (quoting *State v. Spaulding*, 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975), *vacated in part on other grounds*, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976)), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001).

Sergeant Ross's testimony amounted to nothing more than a shorthand statement of fact based on her observation of the attack. *See id.* (characterizing "testimony that the victim's screaming sounded like somebody fearing for his life and that the crime scene was worse than a hog killing" as admissible shorthand statements of fact). Furthermore, contrary to defendant's assertion, it is of no consequence that Sergeant Ross's description of the injury as "serious" embraced an ultimate issue to be decided by the jury. *See Owen*, 130 N.C. App. at 515, 503 S.E.2d at 432. We therefore conclude that the trial court did not abuse its discretion by admitting this testimony.

II.

Defendant next argues the trial court erred in denying his motion to dismiss the assault with a deadly weapon inflicting serious injury charge because there was insufficient evidence to show that the assault inflicted a serious injury. We disagree.

We review a trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007), *appeal after remand*, 197 N.C. App. 403, 677 S.E.2d 14 (2009) (unpublished). A defendant's motion to dismiss a charge on the basis of insufficiency of the evidence should be denied if "'there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.'" *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004) (quoting *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996)), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The evidence is to be considered "in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence." *Garcia*, 358 N.C. at 412-13, 597 S.E.2d at 746.

The essential elements of assault with a deadly weapon

inflicting serious injury are "(1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Aytche*, 98 N.C. App. 358, 366, 391 S.E.2d 43, 47 (1990); *accord* N.C. Gen. Stat. § 13-32(b) (2013). "Cases that have addressed the issue of the sufficiency of evidence of serious injury appear to stand for the proposition that as long as the State presents evidence that the victim sustained a physical injury as a result of an assault by the defendant, it is for the jury to determine the question of whether the injury was serious." *State v. Alexander*, 337 N.C. 182, 189, 446 S.E.2d 83, 87 (1994). "Substantial evidence of a serious injury that is sufficient to survive a motion to dismiss includes, but is not limited to, evidence of 'hospitalization, pain, blood loss, and time lost at work.'" *State v. Bagley*, 183 N.C. App. 514, 526, 644 S.E.2d 615, 623 (2007) (quoting *State v. Woods*, 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997)).

Here, the State presented evidence showing that defendant assaulted Alperstine with a razor blade and that Alperstine suffered an injury resulting in blood loss and requiring immediate medical attention at the emergency room. Although Alperstine made the personal decision to return to work the day after the assault, she was required to be on light duty for the following two weeks. In the weeks following the assault,

Alperstine could not move or lift anything with her left arm as a result of the injury, and, nearly three years later, she still had a scar on her forearm and experienced lingering numbness from the scar down to her forefinger and thumb. Viewing this evidence in the light most favorable to the State, we conclude that there was substantial evidence of serious injury sufficient to withstand defendant's motion to dismiss. The trial court, therefore, did not err in denying defendant's motion to dismiss the assault with a deadly weapon inflicting serious injury charge.

## III.

Finally, defendant argues that portions of the State's closing argument were grossly improper. As a result, defendant contends, the trial court's failure to intervene *ex mero motu* to address the allegedly improper closing remarks constituted reversible error. We disagree.

Because defendant failed to raise timely objections to the allegedly improper closing remarks challenged on appeal, our review is limited to determining "whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002). "A prosecutor must be

allowed wide latitude in the argument of hotly contested cases and may argue all the facts in evidence and any reasonable inferences that can be drawn therefrom." *State v. Alford*, 339 N.C. 562, 571, 453 S.E.2d 512, 516 (1995). "[I]n order to constitute reversible error, [a] prosecutor's remarks must be both improper and prejudicial." *Jones*, 355 N.C. at 133, 558 S.E.2d at 107-08. In determining whether a prosecutor's closing remarks were improper, "the remarks must be viewed in context and in light of the overall factual circumstances to which they refer." *State v. Alston*, 341 N.C. 198, 239, 461 S.E.2d 687, 709 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100, *mandamus denied*, 472 S.E.2d 334 (1996).

Defendant first contends the prosecutor grossly exaggerated the extent of Alperstine's injury and thus made statements unsupported by the evidence. Defendant takes particular issue with the prosecutor's assertion that all of the correctional officers that testified described Alperstine's injury as "bleeding profusely." We must, however, view the remark in context. *See id.* It is evident from the record that the prosecutor was providing the jury with a summation of the evidence presented. Immediately before the statement defendant finds objectionable, the prosecutor asked the jury: "What did Amy tell you?" In describing her injury, Alperstine testified

as follows:

> There was a lot of blood. When I finally got to the emergency room at Wake Tech -- or at WakeMed, it -- the sides had curled up away, and I mean, it was gap and you could see the muscle and everything underneath. So it was very deep.

Furthermore, while the other officers that testified did not specifically state that Alperstine's forearm was bleeding profusely, they all testified that it was bleeding. The prosecutor's remark, therefore, was based on reasonable inferences drawn from the evidence, and the trial court did not err by failing to intervene *ex mero motu*.

Defendant also takes exception to the prosecutor's remark describing the injury as "a five-inch laceration," arguing that the evidence at trial indicated that the laceration was five centimeters, not inches, in length. Aside from this one misstatement, the prosecutor correctly described the injury as being five centimeters in length several times throughout her closing remarks. Therefore, when viewed in context of the prosecutor's closing argument as a whole, the reference to inches was an isolated misstatement that did not descend to the level of gross impropriety as to demand intervention by the trial court *ex mero motu*. *See Braxton*, 352 N.C. at 204, 531 S.E.2d at 455 ("[T]he prosecutor's one-time description of

defendant as 'that thing' was not so improper as to require action by the trial court *ex mero motu*.").

Defendant next contends the prosecutor improperly referred to injuries not suffered by Alperstine, thereby distorting the evidence and the seriousness of the injury in the following remarks:

> It doesn't matter that Amy Alperstine wasn't killed, or that she didn't almost die, the way [defendant] used [the razor blade] could certainly have caused that kind of thing to happen. . . . Had he been able to get closer to her, had some other part of her body somehow come in contact with him before her hand, he could have cut her somewhere else. Had that razor blade gone a bit deeper, or say, you know, as she approached, she had her hand out like this, you know, with the back of her hand facing up. But say she had reached through the other way, and she had reached out to him palm up, that same place on the underside of her arm could have caused far, far more damage. . . . Luckily, she was not hurt worse. Luckily, she didn't -- it wasn't the inside of her wrist and she didn't almost die. . . . Clearly, as we've discussed already, it could have been a lot worse. Had her arm been turned over and that razor blade caught her down to the muscle as deep as it went on the top through the bottom, obviously this could have been much worse.

Defendant, however, fails again to understand the prosecutor's argument in its proper context. The remarks defendant challenges were made in the context of the prosecutor explaining to the jury that the razor blade was a deadly weapon because of

the way it was employed by defendant. We therefore conclude that the remarks stayed within the parameters of a proper closing argument, because the prosecutor merely sought to convince the jury that the State had proven all of the elements of its case against defendant.

Finally, defendant asserts that the prosecutor made derogatory comments about defense counsel that undermined defendant's right to a fair trial. While it is well-settled that a prosecutor "may not make uncomplimentary comments about opposing counsel," *State v. Sanderson*, 336 N.C. 1, 10, 442 S.E.2d 33, 39 (1994), *appeal after remand*, 346 N.C. 669, 488 S.E.2d 133 (1997), the prosecutor in this case did no such thing. Considered in context, the prosecutor's remarks were not, as defendant contends, a direct attack on defense counsel, but rather an attempt to rebut the closing arguments the prosecutor anticipated defense counsel would make. As a result, the remarks were well within the bounds of permissible closing argument and the trial court did not have an obligation to intervene *ex mero motu*. *See State v. Roache*, 358 N.C. 243, 301, 595 S.E.2d 381, 418 (2004) (holding that the trial court did not err by failing to intervene *ex mero motu* where the prosecutor made "shorthand commentary on the arguments presented by defense counsel during closing statement").

No Error.

Judges McGEE and CALABRIA concur.

Report per Rule 30(e).