STATE OF NORTH CAROLINA v. PENNY L. WALLACE AND BRENDA BENTON

No. COA08-1429

(Filed 2 June 2009)

**1. Assault— deadly weapon with intent to kill inflicting serious injury—motion to dismiss—deadly weapon**

The trial court did not err by denying defendant Benton's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury even though defendant contends there was no evidence presented that tended to show she employed a deadly weapon during the assault, because in the light most favorable to the State and taking into consideration the relative size and conditions of the parties in conjunction with the manner these instruments were used, the evidence was sufficient to submit to the jury the question of whether defendant's fists or the tree limbs she allegedly used were of such character as to constitute a deadly weapon.

**2. Assault— deadly weapon with intent to kill inflicting serious injury—motion to dismiss—serious injury**

The trial court did not err by submitting the charge of assault with a deadly weapon with intent to kill inflicting serious injury and its lesser-included offenses to the jury against defendant Wallace even though she asserted that there was no evidence presented tending to show her alleged assault with a deadly

weapon resulted in serious injury, because: (1) the evidence presented at trial tended to show that in addition to placing the plastic bag over the victim's head, defendant also participated in beating him; (2) a doctor's testimony provided a sufficient causal link between the use of defendant's fists and the tree limbs and the injuries inflicted upon the victim; and (3) the State presented substantial evidence tending to show that the victim sustained serious injuries including the testimonies of a doctor, the victim, the victim's wife, and a detective.

**3. Assault— deadly weapon with intent to kill inflicting serious injury—jury instruction—plastic bag**

 The trial court did not err by instructing the jury that it could find defendant Benton guilty of assault with a deadly weapon with intent to kill inflicting serious injury if it found a plastic bag, limb, or fist was a deadly weapon even though defendant contends there was no evidence that she either used or possessed the plastic bag during the assault because the victim's testimony was sufficient evidence to support submission of the charge.

Appeal by defendants from judgments entered 5 February 2008 by Judge Susan C. Taylor in Richmond County Superior Court. Heard in the Court of Appeals 6 April 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Charles E. Reece and Assistant Attorney General LaToya B. Powell, for the State.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by John Keating Wiles, for defendant-appellant Wallace.*

*Jarvis John Edgerton, IV, for defendant-appellant Benton.*

STEELMAN, Judge.

Where the State presented substantial evidence to support every element of assault with a deadly weapon inflicting serious injury, the trial court properly denied defendants' motions to dismiss. Where substantial evidence was presented at trial to submit each alternative theory of guilt to the jury, the trial court did not err by instructing the jury in the disjunctive.

## I.  Factual and Procedural Background

The State's evidence tended to show that James Allred (Allred) had a long-standing boundary dispute with Penny Wallace (Wallace)

over real property located on County Line Road in Richmond County, North Carolina. The dispute originated approximately one year after Allred sold Wallace a six acre tract of land, which was adjacent to his twenty acre tract of land. Allred had previously used Wallace's driveway to travel to and from his property. Wallace blocked Allred's access and his property became landlocked. As a result, Allred acquired an easement from his nephew and built another road for ingress and egress. The new road was constructed only feet away from Wallace's property line and led to another controversy between Allred and Wallace. Prior to the events that are the subject of this appeal, Wallace's husband died of a heart attack. Wallace believed that her husband had died of a broken heart and held Allred responsible. Wallace told Allred "she'd see him in hell for that."

At approximately 11:30 a.m. on 11 April 2005, Allred was between 100 and 200 yards away from Wallace's house and was taking photographs of debris that had been placed on his easement. Allred was approached by Brenda Benton (Benton), Wallace's adult daughter, who grabbed his camera and caused both of them to fall to the ground. Allred stood up and walked in the opposite direction while Benton walked toward the house. Benton reappeared with Wallace and the two women began to assault Allred. This assault would last for over an hour.

At that time, Allred was 79 years old, 6 feet tall, and weighed 165 pounds. Allred had a pacemaker in his chest, which regulated the beating of his heart and had also been diagnosed with polyneuropathy, a progressive disease that affects a person's muscles and nerves. Allred had passed out or fallen down at least once before due to this condition. Benton was 40 years old, 5 feet 2 inches tall, and weighed 125 pounds. Benton was allegedly paralyzed on the right side of her body, but had some use of her right hand. Wallace was 66 years old, 4 feet 11 inches tall, and weighed 112 pounds.

The assault began when Benton jumped on Allred's back and Wallace assisted her in pulling him to the ground and tying his hands and feet with plow rope. Allred initially decided not to fight back because he believed that if he did, he would be "in real trouble." While Allred was lying on his back, Wallace produced a "translucent"[1] plastic bag, placed it over his head, and stated "This won't last long." Allred was able to create a hole in the plastic bag with his teeth and

---

1. Translucent is defined as "[t]ransmitting light but causing significant diffusion to eliminate perception of distinct images." *The American Heritage Dictionary* 1288 (2d college ed. 1982).

then used his finger to make the hole bigger. Then either "[b]oth of them or one of them started trying to cram the bag in [Allred's] mouth[,]" but this attempt was unsuccessful. After Allred grabbed Wallace's hair, Benton sat on his chest, bent his arms back, and started "beating [him] in the face." Both Wallace and Benton repeatedly struck Allred with their fists and tree limbs from the surrounding wooded area. At some point during the assault, the parties became exhausted and took a break to rest. Allred began begging for his life because he was convinced Wallace and Benton were going to kill him. Allred stated, "[Wallace], if you kill me . . . you know they'll come right to you."

Allred was not sure what happened next because he passed out. Because Allred could barely stand when he awoke, Wallace and Benton put him in a child's wagon and pulled him to their carport. Wallace instructed Allred to write a note saying that Wallace and Benton were nice to him and that "the land in question was theirs all the time and [he] shouldn't have been trying to take it." With his hands still bound in front of him, Allred wrote the note as Wallace dictated. Once the note was written and signed, Wallace and Benton became "extremely gentle." Benton brought a washcloth to Wallace, and she cleaned the blood off of Allred's face and neck. Wallace also took off Allred's bloody shirt, but he did not know what she did with it. Wallace and Benton then assisted Allred in walking to his pickup truck. Allred drove home and his son called 911. Allred gave a statement to law enforcement about the events that had transpired earlier that day, and his wife took him to the emergency room to obtain treatment for his injuries.

Detective Michael Williams (Detective Williams) of the Richmond County Sheriff's Office executed a search warrant on Wallace and Benton's residence that same day. Detective Williams observed that both Wallace and Benton had bandages on their hands. Wallace had a small cut mark on her thumb and Benton had two small "cuts or holes punched" into the back of her hand. Detective Williams described Wallace and Benton as very "energetic" and "talkative." A search of the outside of the residence revealed a small area where debris had been burned. Detective Williams described the items in the burn pile as "small twigs[,]" but later stated some were "a couple inches in diameter" and the longest measured eight feet.

On 16 May 2005, Wallace and Benton were indicted for attempted first degree murder, first degree kidnapping, and assault with a deadly weapon with intent to kill inflicting serious injury. Wallace and

**STATE v. WALLACE**

[197 N.C. App. 339 (2009)]

Benton's criminal actions were joined and tried before the Richmond County Superior Court. At the close of the State's evidence and then again at the close of all the evidence, both Wallace and Benton made a motion to dismiss the assault with a deadly weapon with intent to kill inflicting serious injury charge. These motions were denied. In addition to attempted first degree murder and first degree kidnapping, the trial court instructed the jury on assault with a deadly weapon with intent to kill inflicting serious injury and five lesser-included offenses: (1) assault with a deadly weapon with intent to kill; (2) assault with a deadly weapon inflicting serious injury; (3) assault with a deadly weapon; (4) assault inflicting serious injury; and (5) simple assault.

The jury found both Wallace and Benton not guilty of attempted first degree murder and first degree kidnapping. Wallace and Benton were found guilty of the lesser-included offense of assault with a deadly weapon inflicting serious injury. The trial court determined Wallace to be a prior record level II for felony sentencing purposes and imposed an active prison term of twenty-nine to forty-four months. The trial court determined Benton to be a prior record level I for felony sentencing purposes and imposed an active prison term of twenty-five to thirty-nine months. Wallace and Benton appeal.

## II.  Motions to Dismiss

Wallace and Benton contend the trial court erred by denying their motions to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury for two separate and distinct reasons. Each challenge the sufficiency of the evidence to support different elements of the offense. We disagree.

### A.  Standard of Review

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). We view the evidence "in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to

resolve." *State v. Scott,* 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002) (internal citation and quotation omitted).

## B. Benton's Motion to Dismiss

**[1]** In her first argument, Benton contends the trial court erred ‘by denying her motion to dismiss the charge. of assault with a deadly weapon with the intent to kill inflicting serious injury and instructing the jury on the lesser-included offenses where there was no evidence presented that tended to show she employed a deadly weapon during the assault.[2]

At the outset, we note that an acting in concert instruction was not requested by the State nor given to the jury by the trial court. Therefore, we must determine whether Benton, individually, employed a deadly weapon during the assault against Allred.

A deadly weapon is characterized as one which under the circumstances of its use is likely to cause death or great bodily harm, but must not necessarily kill. *State v. Strickland,* 290 N.C. 169, 178, 225 S.E.2d 531, 538 (1976). "The deadly character of the weapon depends sometimes more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of the weapon itself." *State v. Smith,* 187 N.C. 469, 470, 121 S.E. 737, 737 (1924) (citations omitted). Our Supreme Court has explained:

> Where the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly within the foregoing definition is one of law, and the Court must take the responsibility of so declaring. But where it may or may not be likely to produce fatal results, according to the manner of its use, or the part of the body at which the blow is aimed, its alleged deadly character is one of fact to be determined by the jury.

*Id.* (internal citation omitted). "No item, no matter how small or commonplace, can be safely disregarded for its capacity to cause serious bodily injury or death when it is wielded with the requisite evil intent and force." *State v. Sturdivant,* 304 N.C. 293, 301 n.2, 283 S.E.2d 719, 725 n.2 (1981) (citations omitted).

---

2. Because Benton only challenges the sufficiency of the evidence to support the element that a deadly weapon was used during the assault, we need not address the remaining elements of assault with a deadly weapon with intent to kill inflicting serious injury as set forth in N.C. Gen. Stat. § 14-32 (2005).

In the instant case, the indictment against Benton for the assault with a deadly weapon with intent to kill inflicting serious injury charge alleged: "defendant named above unlawfully, willfully and feloniously did assault James Allred with Large Limb, Fist and Plastic Bag over his head, a deadly weapon, with the intent to kill and inflicting serious injury." We must therefore determine whether the State presented sufficient evidence to support the assertion that Benton used at least one of the instruments set forth in the indictment as a deadly weapon.

We have previously held "that a defendant's fists can be considered a deadly weapon depending on the manner in which they were used and the relative size and condition of the parties." *State v. Lawson*, 173 N.C. App. 270, 279, 619 S.E.2d 410, 416 (2005) (citations omitted), *disc. review denied*, 360 N.C. 293, 629 S.E.2d 276 (2006). Although traditionally these cases have involved a male assailant attacking a smaller female victim, there is no authority that stands for the proposition that these roles could not be reversed depending upon the size and conditions of the parties involved. *See, e.g.*, *State v. Rogers*, 153 N.C. App. 203, 569 S.E.2d 657 (2002), *disc. review denied*, 357 N.C. 168, 581 S.E.2d 442 (2003); *State v. Hunt*, 153 N.C. App. 316, 569 S.E.2d 709 (2002); *State v. Grumbles*, 104 N.C. App. 766, 411 S.E.2d 407 (1991); *State v. Shubert*, 102 N.C. App. 419, 402 S.E.2d 642 (1991); *State v. Jacobs*, 61 N.C. App. 610, 301 S.E.2d 429, *disc. review denied*, 309 N.C. 463, 307 S.E.2d 368 (1983). Further, our appellate courts have held that a piece of wood may or may not constitute a deadly weapon depending on the manner of its use. *State v. Palmer*, 293 N.C. 633, 640, 239 S.E.2d 406, 411 (1977) ("wooden stick"); *State v. Tillery*, 186 N.C. App. 447, 450-51, 651 S.E.2d 291, 294 (2007) ("2x4 board").

Benton was 40 years old, 5 feet 2 inches tall, and weighed 125 pounds at the time of the assault. Benton was allegedly paralyzed on the right side of her body, but had some use of her right hand and evidence in the record shows that Benton had been performing yard work earlier in the day. Allred was a 79-year-old man with a heart condition and had been diagnosed with polyneuropathy. Although Allred was 6 feet tall and weighed 165 pounds, Wallace and Benton together outweighed him by approximately 72 pounds. We note that while we are here deciding whether sufficient evidence was presented tending to show Benton, individually, employed a deadly weapon during the assault, that does not preclude us from considering the fact that Wallace, a 66-year-old woman who allegedly weighed 112 pounds,

assisted Benton in knocking Allred to the ground and rendering him completely incapacitated during the assault.

Benton jumped on Allred's back and pulled him to the ground. Benton assisted in tying Allred's hands and feet with plow rope. Once Wallace had placed the plastic bag over his head, Benton sat on his chest, restrained his arms, and repeatedly hit him with her fists. Further evidence shows Benton also used "[l]imbs off of some trees" to "beat" Allred. Benton's assault on Allred continued for over an hour until she was so exhausted she had to take a break to rest.

In the light most favorable to the State and taking into consideration the relative size and conditions of the parties in conjuction with the manner these instruments were used, this evidence was sufficient to submit to the jury the question of whether Benton's fists or the tree limbs were of such character to constitute a deadly weapon.[3] The trial court properly denied Benton's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury.

Benton's argument is without merit.

### C.  Wallace's Motion to Dismiss

[2] In her sole argument on appeal, Wallace contends the trial court erred by submitting the charge of assault with a deadly weapon with intent to kill inflicting serious injury and its lesser-included offenses to the jury, asserting that there was no evidence presented tending to show Wallace's alleged assault with a deadly weapon resulted in "serious injury."

Wallace's argument is two-fold. Wallace first argues that there is no "chain of causation" linking Allred's injuries to Wallace's use of a deadly weapon. This contention is based upon a flawed premise. Wallace asserts that placing the plastic bag over Allred's head was the only conduct she engaged in that would constitute assault with a deadly weapon. However, the evidence presented at trial tended to show that in addition to placing the plastic bag over Allred's head, she also participated in beating him. Allred testified that "they beat [him]" and that "[t]hey were on top of [him] beating on [him]" with their fists and tree limbs. Detective Williams read the notes he had taken regard-

---

3. We note the trial court did not give a peremptory instruction to the jury regarding what constituted a deadly weapon. Having deemed that Benton's fists or the tree limbs were not *per se* deadly weapons, the trial court properly instructed the jury on the lesser-included offenses.

ing Allred's account of the events: "He stated that they started beating him in the face" once he was on the ground. Detective Williams also testified that Allred had stated "that they had used their hands, fists, and some brush or sticks" to hit him.

Allred's emergency room physician, Dr. Steven Strobel (Dr. Strobel) recounted the assault as Allred had explained it to him: "He had said that he was grabbed from behind, pushed to the ground, [a] bag was placed over his head, his wrists were tied, and then he was kicked and punched multiple times in the ribs, as well as over his facial area." After receiving this explanation, Dr. Strobel ordered a chest x-ray, which revealed a non-displaced left lateral rib fracture. Dr. Strobel opined that this injury had been caused by blunt force trauma to the chest wall. Other injuries Dr. Strobel observed included bruises and contusions with significant swelling over Allred's facial area, dried blood around his lips, nose, and teeth margins, and a subconjunctival hemorrhage[4] of his left eye. Dr. Strobel also observed that Allred had bruising around his wrists and forearms, which appeared to be ligature marks. We hold that based upon the above-described testimony, there was a sufficient causal link between the use of Wallace's fists and the tree limbs and the injuries inflicted upon Allred.

Wallace next challenges whether Allred's injuries could be deemed serious. "The term 'serious injury' as employed in [N.C. Gen. Stat. § 14-32] means physical or bodily injury resulting from an assault with a deadly weapon." *State v. James*, 321 N.C. 676, 688, 365 S.E.2d 579, 586 (1988). It is well-established that "[w]hether serious injury has been inflicted must be determined according to the particular facts of each case and is a question the jury must answer under proper instruction." *State v. Marshall*, 5 N.C. App. 476, 478, 168 S.E.2d 487, 489 (1969) (citation omitted); *see also State v. Alexander*, 337 N.C. 182, 189, 446 S.E.2d 83, 87 (1994) ("Cases that have addressed the issue of the sufficiency of evidence of serious injury appear to stand for the proposition that as long as the State presents evidence that the victim sustained a physical injury as a result of an assault by the defendant, it is for the jury to determine the question of whether the injury was serious." (citation omitted)). Factors to be considered in determining if an injury is serious include pain, loss of blood, hospitalization, and time lost from work. *State v. Owen*, 65

---

4. A subconjunctival hemorrhage occurs when a blood vessel ruptures just underneath the clear surface of a person's eye, which can be produced by blunt force trauma. This injury causes the white part of the eye to turn blood red.

N.C. App. 107, 111, 308 S.E.2d 494, 498 (1983). "Evidence that the victim was hospitalized, however, is not necessary for proof of serious injury." *State v. Hedgepeth*, 330 N.C. 38, 53, 409 S.E.2d 309, 318 (1991) (citation omitted).

In addition to Dr. Strobel's description of Allred's injuries, he also testified that he had prescribed pain medication and instructed Allred to limit his physical activities. Allred was also instructed to cough and breathe deeply frequently to avoid the risk of "atelectasis reflect" in the lung tissue and subsequent pneumonia. Further, the State introduced the photographs Detective Williams had taken of Allred on 11 and 14 April 2005. The jury also heard testimony from Allred and his wife that his injuries "hurt" and that he was "having a lot of pain" in his chest. Detective Williams testified that Allred was "obviously distraught[,]" "very weak in appearance[,]" and "was literally physically shaking." We hold that the State presented substantial evidence tending to show that Allred sustained serious injuries as a result of the assault by Wallace and properly submitted this issue to the jury for resolution. *See State v. Brunson*, 180 N.C. App. 188, 194, 636 S.E.2d 202, 206 (2006) (holding that where the victim had swollen, black eyes; bruises on her neck, arms, back and inner thighs; redness on her vagina; and the victim testified that she suffered "pain all . . . over" as a result of the beating, this evidence was sufficient for the jury to find that the defendant had inflicted serious injury), *per curium aff'd*, 362 N.C. 81, 653 S.E.2d 144 (2007).

Wallace's arguments are without merit.

### III. Jury Instructions

[3] In her second argument on appeal, Benton contends the trial court committed reversible error by instructing the jury that it could find her guilty of assault with a deadly weapon with intent to kill inflicting serious injury if it found "a plastic bag, limb, or fist . . . was a deadly weapon" where there was no evidence that she either used or possessed the plastic bag during the assault. We disagree.

In support of her contention, Benton cites *State v. Belton*, 318 N.C. 141, 347 S.E.2d 755 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396 (1997). In *Belton*, our Supreme Court stated "a conviction cannot stand merely because it could have been supported by one theory submitted to the jury if another, invalid theory also was submitted and the jury's general verdict of guilty does not specify the theory upon which the jury based its verdict." 318 N.C. at 164, 347 S.E.2d at 769 (citations omitted). We must therefore deter-

mine whether the use of the plastic bag as a deadly weapon was a valid alternative theory of guilt to submit to the jury.

On direct examination, Allred testified that although Wallace initially placed the plastic bag over his head, when he managed to bite a hole in it, "*they* attempted to cram [the plastic bag] in my mouth. . . . And then I'm not sure which one put that plastic bag over my mouth and my nose and tried to keep me from breathing. That didn't work either." Later on cross-examination, Allred repeated that "[b]oth of them or one of them started trying to cram the bag in my mouth." This evidence was sufficient to support the submission of the assault charge to the jury based upon the plastic bag, as to Benton. We hold the trial court's disjunctive jury instruction did not submit an invalid alternative theory of guilt to the jury.

Benton's argument is without merit.

NO ERROR.

Chief Judge MARTIN and Judge CALABRIA concur.