An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-989
NORTH CAROLINA COURT OF APPEALS

Filed: 18 March 2014

STATE OF NORTH CAROLINA

v.                                        Cleveland County
                                          Nos. 11 CRS 50468, 50471, 50473
JACKIE CARROLL

Appeal by defendant from judgments entered 20 February 2013 by Judge Linwood O. Foust in Cleveland County Superior Court. Heard in the Court of Appeals 5 February 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Heather H. Freeman, for the State.*
>
> *Gilda C. Rodriguez for defendant-appellant.*

BRYANT, Judge.

Where there was no conflict in the facts regarding the injuries suffered by the victim, the trial court did not err in denying defendant's request for an instruction on assault with a deadly weapon as a lesser-included offense of assault with a deadly weapon with intent to kill inflicting serious injury. Because there was sufficient evidence to support an instruction

on the doctrine of acting in concert as to robbery with a dangerous weapon, we find no error in the trial court's jury instruction as to that charge.

On 11 April 2011, a Cleveland County Grand Jury indicted defendant Jackie Carroll on charges of assault with a deadly weapon with intent to kill inflicting serious injury, robbery with a dangerous weapon, and possession of a firearm by a felon. The matter came on for trial before a jury during the 18 February 2013 Criminal Session of Cleveland County Superior Court, in Shelby, the Honorable Linwood O. Foust, Judge presiding.

The evidence presented at trial tended to show that on the evening of 2 February 2011, Michael Black, the victim, received a phone call from defendant's daughter, Tangie. Tangie and her boyfriend, Steven, were looking for a ride. After picking up Tangie and Steven, Tangie told Black that she wanted him to pick up her mother, defendant. After picking up defendant, someone proposed heading to the Royal Motel. Black testified that he had recently been paid and had over $400.00 on his person. Black paid for the motel room. In the room, everyone but Steven was drinking beer, and defendant and Tangie were doing drugs. Black testified that while sitting on the bed talking, defendant

"just like came up and started hitting me in the head with the gun. . . . [A]nd then Tangie was trying to help her or whatever the situation was." "[T]hey was going in my pockets taking my money and stuff out." Black described how he was continually hit on the head and face, bleeding, and how things became "fuzzy." Black then lost consciousness. When Black regained consciousness, defendant, Tangie, and Steven had left the motel room. His money had been taken from his pockets, and his car was gone. Black called 9-1-1.

Following the close of the State's evidence, defendant made motions to dismiss the charges of assault with a deadly weapon with intent to kill inflicting serious injury and robbery with a dangerous weapon. Both motions were denied. Defendant declined to present evidence.

Following the trial court's instructions, the jury returned guilty verdicts against defendant for the offenses of assault with a deadly weapon inflicting serious injury, robbery with a dangerous weapon, and possession of a firearm by a felon. The trial court entered judgment on the charge of assault with a deadly weapon inflicting serious injury, sentencing defendant to a term of 40 to 57 months. In a separate judgment, the trial court consolidated for sentencing the convictions for robbery

with a dangerous weapon and possession of a firearm by a felon and sentenced defendant to a concurrent term of 103 to 133 months.  Defendant appeals.

_____

On appeal, defendant questions whether the trial court committed plain error (I) in denying her request for an instruction on a lesser-included offense and (II) instructing the jury on acting in concert.

*I*

Defendant first argues that the trial court committed plain error in denying her request for instruction on the lesser-included offense of assault with a deadly weapon.  We disagree.

*Preservation of defendant's challenge and standard of review*

Defendant was indicted on the charge of assault with a deadly weapon with intent to kill inflicting serious injury pursuant to N.C. Gen. Stat. ' 14-32(a).  At the close of all of the evidence, the trial court met with counsel for the State and the defense in chambers to discuss the proposed jury instructions.  The meeting was not recorded.  However, the parties returned to open court where the trial court summarized the in-chambers discussion for the record, as follows:

> The Court has informed the defendant and the State that it intends to give the following instructions from the patterned jury instructions . . . 208.10, assault with a deadly weapon inflicting serious injury -- 208.10, assault with a deadly weapon with intent to kill inflicting serious injury. Alternatively the Court will give the lesser included offense of assault with a deadly weapon inflicting serious injury. That's 208.15.
>
> . . .
>
> The Court will now allow the defendant to place on record the instructions that she requested that the Court has denied.
>
> [Defense Counsel]: Your Honor, I've also requested instructions 208.50, assault with a deadly weapon and 208.60, assault inflicting serious injury.

Following the jury instructions, the trial court permitted counsel for the State and counsel for the defense an opportunity to object to the instructions given. As noted in defendant's brief to this Court, counsel for the defense did not object.

Pursuant to our North Carolina Rules of Appellate Procedure, "[a] party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires to consider its verdict . . . out of the presence of the jury." N.C. R. App. P. 10(a)(2) (2013); *see also State v. Young*, 196 N.C. App. 691, 697-98, 675 S.E.2d 704, 708 (2009) (holding that

where the defense counsel presented his request for a jury instruction during the charge conference and the trial court denied the request but noted the objection, the objection was properly preserved despite a failure to object at the time of the jury charge); *accord Wall v. Stout*, 310 N.C. 184, 188-89, 311 S.E.2d 571, 574 (1984) ("It is our conclusion that neither Rule 10(b)(2) [(now Rule 10(a)(2))] nor Rule 21 [of the General Rules of Practice for the Superior and District Courts] required plaintiffs to repeat their objections to the jury instructions after the charge was given in order to preserve their objections for appellate review. These rules were obviously designed to prevent unnecessary new trials caused by errors in instructions that the court could have corrected if brought to its attention at the proper time. It is our opinion that this policy is met when a request to alter an instruction has been submitted and the trial judge has considered and refused the request. In most instances, it is obvious that further objection at the close of the instructions would be unavailing.").

As the record reflects, defense counsel made requests of the trial court to instruct on two additional lesser-included offenses of assault with a deadly weapon with intent to kill inflicting serious injury, *i.e.,* assault with a deadly weapon

and assault inflicting serious injury. These requests were denied and noted for the record; therefore, defendant's challenge to the jury instruction is preserved for appellate review. *See Young*, 196 N.C. App. at 697-98, 675 S.E.2d at 708.

Where a defendant preserves her challenge to jury instructions for appellate review, we review the challenged instructions de novo. *See State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).

*Analysis*

The trial court instructed the jury on the offense of assault with a deadly weapon with intent to kill inflicting serious injury and assault with a deadly weapon inflicting serious injury. The trial court denied defendant's request for an instruction on assault with a deadly weapon and assault inflicting serious injury. Following deliberation, the jury found defendant guilty of assault with a deadly weapon inflicting serious injury.

On appeal, defendant contends the trial court committed plain error in failing to instruct the jury on the lesser-included offense of assault with a deadly weapon. Defendant argues there was conflicting evidence as to the "serious injury"

element of the charge "assault with a deadly weapon inflicting serious injury," for which she was convicted.

> The serious injury element of N.C. Gen. Stat. § 14-32 [(Felonious assault with deadly weapon with intent to kill or inflicting serious injury; punishments)] means a physical or bodily injury. The courts of this State have declined to define serious injury for purposes of assault prosecutions other than stating that the term means physical or bodily injury resulting from an assault, and that further definition seems neither wise nor desirable.

*State v. Walker*, 204 N.C. App. 431, 446-47, 694 S.E.2d 484, 494-95 (2010) (citations omitted). "It is well-established that whether serious injury has been inflicted must be determined according to the particular facts of each case and is a question the jury must answer under proper instruction." *State v. Wallace*, 197 N.C. App. 339, 347, 676 S.E.2d 922, 928 (2009) (citation and quotations omitted). "Relevant factors in determining whether serious injury has been inflicted include, but are not limited to: (1) pain and suffering; (2) loss of blood; (3) hospitalization; and (4) time lost from work. Evidence that the victim was hospitalized, however, is not necessary for proof of serious injury." *State v. Morgan*, 164 N.C. App. 298, 303, 595 S.E.2d 804, 809 (2004) (citing *State v. Joyner*, 295 N.C. 55, 65, 243 S.E.2d 367, 374 (1978)).

At trial, the State presented the following evidence regarding the extent of Black's injuries. During the early morning hours of 3 February 2011, Officer Michael Howard of the City of Kings Mountain Police Department was dispatched to the Royal Motel in response to a report of an assault and robbery. When he first encountered Michael Black, Officer Howard described him as "[b]loody."

> He was complaining of head injury and neck injury, that he was hurting. When I had first arrived on the scene and began speaking to him, he had stated that he believed he had went unconscious during the assault.

Emergency Medical Service responder Casey Woods also reported to the scene.

> Q. What wounds, if any, were you able to determine he had?
>
> A. According to my detailed physical findings his face had some soft tissue swelling/bruising. He had bleeding controlled laceration to the head. Neck, he complained of neck pain without swelling or bruising noted. . . . His head had some bleeding around his nose.

Black was transported to the Cleveland Regional Medical Center Emergency Room for further evaluation and treatment. Using hospital records, the treating nurse gave the following testimony regarding Black's condition and treatment upon

admission to the hospital:

> [Black] had a hematoma which [sic] bruising to his forehead and lacerations to the left and right side of his -- the back of his head.
>
> . . .
>
> Q. Does the hospital record indicate what kind of treatment Mr. Black underwent as a result of having those injures?
>
> A. Yes. EMS notes his lacerations which are the cuts on the back of his head were cleansed. We took him to CT for his lacerations on his head to make sure he didn't have bleeding inside of his head. . . . Looks like the physician stapled the laceration in his head on both sides.
>
> . . .
>
> Q. Would those kind of injuries have required him to receive some sort of follow up care?
>
> . . .
>
> A. He would need to follow up for a recheck and have the staples removed.

The evidence of the seriousness of Michael Black's wounds is not conflicting. The victim was beaten about the head with a gun, causing bleeding and lacerations requiring emergency medical treatment which resulted in staples to his head on both sides. Based on these facts, it was proper for the trial court to instruct and for the jury to find that the injuries suffered

by Black's wounds were serious injuries. *See Wallace*, 197 N.C. App. 339, 676 S.E.2d 922 (holding no error in the trial court's denial of defendant's motion to dismiss the charge of assault with a deadly weapon with intent to kill inflicting serious injury after defendant argued there was no serious injury where the evidence indicated that defendant and co-defendant bloodied their 79-year-old victim's face by beating him with their fists and tree limbs). Defendant's argument is overruled.

*II*

Next, defendant argues the trial court committed plain error in instructing the jury on the theory of acting in concert as it applied to the offense of robbery with a firearm. We disagree.

Defendant acknowledges that she failed to object to the trial court's instruction on acting in concert given with the armed robbery instruction. As such, defendant requests that we review this issue for plain error.

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in

a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence*, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (citation and quotations omitted).

For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.

*Id.* at 518, 723 S.E.2d at 334 (citations and quotations omitted).

Codified under General Statutes, section 14-87, the essential elements of armed robbery, as articulated by our Supreme Court, are "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." *State v. Hope*, 317 N.C. 302, 305, 345 S.E.2d 361, 363 (1986) (citation and quotations omitted); *see also* N.C. Gen. Stat. ' 14-87(a) (2013). Acting in concert is not an

element of armed robbery; therefore, adding the theory of acting in concert to the indictment would amount to surplusage. *See State v. Westbrooks*, 345 N.C. 43, 57, 478 S.E.2d 483, 492 (1996) ("A criminal indictment is sufficient if it expresses the charge against the defendant in a plain, intelligible, and explicit manner. Specifically, the indictment must allege all of the essential elements of the crime sought to be charged. Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage." (citations and quotations omitted)); *see also State v. Sanders*, No. COA06-783, 2007 N.C. App. LEXIS 244, at *8 (6 February 2007) ("Acting in concert is not an essential element of robbery with a dangerous weapon and, thus, would have been surplusage if included in the indictment." (citation omitted)).

Here, the grand jury found defendant unlawfully stole, took, and carried away $400.00 in United States currency from the person of Michael Black and that defendant committed this act having in possession and with the use and threatened use of a .45 caliber handgun whereby the life of Michael Black was endangered or threatened. Defendant does not challenge the validity of the indictment.

Following the close of the evidence, the trial court gave

the following instruction on armed robbery along with an instruction on acting in concert:

> The defendant has been charged with robbery with a firearm which is taking and carrying away of the personal property of another from his person or in his presence without his consent by endangering or threatening a person's life with a firearm the taker knowing that he was not entitled to take the property and intending to deprive another of its use permanently.
>
> . . .
>
> For a person to be guilty of a crime, it is not necessary that she personally do all of the acts necessary to constitute the crime.
>
> If two or more persons join in a common purpose to commit robbery with a dangerous weapon, each of them, if actively or constructively present, is not only guilty of that crime if the other person commits the crime, but is also guilty of any other crimes committed by the other person in pursuance of the common purpose to commit robbery with a dangerous weapon or a natural or probable consequence of thereof.
>
> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant either by herself or together with Tangie Carroll and Steve Clark had in their possession a firearm and took and carried property from the person or presence of that person without his voluntary consent by endangering or threatening his life with the use or threatened use of a firearm the defendant knowing that she was not entitled to take the property and intending to deprive that person of its use permanently, it would be

your duty to return a verdict of guilty.

If you do not so find or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

The evidence presented at trial clearly showed defendant, armed with a gun, began beating Black in the head and face with the gun while having her daughter, Tangie, assist in relieving Black of his money.

I wasn't paying [defendant] no attention to her being a threat. I was just like talking, and then she just like came up and started hitting me in the head with the gun.

. . .

[Defendant] called for Tangie, and then Tangie was trying to help her or whatever the situation was.

. . .

. . . I don't really remember when I released [defendant's arm] or all that. The only thing I know was they was going in my pockets taking my money and stuff out.

. . .

Q.   Did you see who it was that was going [through your pockets?]

A.   . . . I know [defendant] went in there.

This evidence was more than sufficient to support the jury instruction on acting in concert.  Therefore, we hold the trial

court did not err in giving this instruction to the jury. Defendant's argument is overruled.

No error.

Judges STEPHENS and DILLON concur.

Report per Rule 30(e).